**LAGOMARSINO LAW**
ANDRE M. LAGOMARSINO, ESQ.
Nevada Bar No. 6711
3005 W. Horizon Ridge Pkwy., Suite 241
Henderson, Nevada 89052
Telephone: (702) 383-2864
Facsimile: (702) 383-0065
AML@lagomarsinolaw.com
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| TRINITA FARMER, individually,<br><br>Plaintiffs,<br><br>v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a political subdivision of the State of Nevada; KENNETH LOPERA, individually; TRAVIS CRUMRINE, individually; MICHAEL TRAN, individually; MICHAEL FLORES, individually,<br><br>Defendants. | CASE NO:<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff TRINITA FARMER, individually, by and through her attorney, ANDRE M. LAGOMARSINO, ESQ., hereby submits the following Complaint against Defendants Las Vegas Metropolitan Police Department, Lopera, Crumrine, Tran and Flores.

### JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is based upon 28 U.S.C. § 1331.

2. Venue in this District is proper because all facts plead and all acts and omissions giving rise to this Complaint occurred in Clark County, Nevada in the District of Nevada.

### PARTIES TO THIS ACTION

3. Plaintiff Trinita Farmer (hereinafter "Trinita") is a citizen of United States and a resident of the State of Nevada. Trinita is the mother of decedent Tashii Brown, deceased. When Tashii was alive, he lived with Trinita and they would spend hours on end talking and spending time together. Trinita loved Tashii very much. They had a strong bond and mother-son relationship.

4.	Tashii Brown was a citizen of the United States and a resident of the State of Nevada. He was entitled to all protections afforded to citizens by United States and Nevada law.

5.	Tashii grew up in Hawaii with Trinita and lived the majority of his life with her. At the time of his death, Tashii lived at home with Trinita. Tashii made mistakes and he was incarcerated for a period of time in his thirties. He paid his debt to society. After he was released, Tashii moved to Las Vegas where he lived with Trinita. He was the father of two children. Tashii started a business in Las Vegas selling shoes, hats, and clothing. He also volunteered at the Richard Steele Boxing Club. He was a loving and compassionate person. Tashii was just forty (40) years of age and unarmed when he was unnecessarily and unconstitutionally killed by Officer Lopera of the Las Vegas Metropolitan Police Department on May 14, 2017. Defendants Crumrine, Tran and Flores failed to intervene while Lopera was killing Tashii. Brown's cause of death was determined by the coroner as "asphyxia due to, or as a consequence of police restraint procedures." Tashii's death was ruled a homicide. He was an African-American citizen of United States and a resident of Nevada at the time he was killed.

6.	Defendant Las Vegas Metropolitan Police Department (hereinafter "Metro") is a political subdivision of the State of Nevada. Defendant Metro is a law enforcement agency in Clark County, Nevada. Defendant Metro is responsible for the training, hiring, control, supervision of all its officers and agents as well as the implementation and maintenance of official and unofficial policies. Metro employed co-Defendants Kenneth Lopera, Travis Crumrine, Michael Tran, and Michael Flores.

7.	Defendant Kenneth Lopera (hereinafter "Lopera") was employed as an officer with Metro when he killed Tashii. Lopera is a United States citizen and, upon information and belief, a resident of Clark County, Nevada. Lopera is being sued in his individual capacity. Lopera has also competed as a trained jiu-jitsu fighter.

8.	Defendant Sergeant Travis Crumrine (hereinafter "Sergeant Crumrine") was employed as an officer with Metro. Sergeant Crumrine is a United States citizen and upon information and belief, a resident of Clark County, Nevada. Sergeant Crumrine is being sued in his individual capacity. Crumrine is being sued because he allowed Tashii to be killed and did not intervene to prevent his death.

9. At all times relevant herein, Defendant Officer Tran (hereinafter "Officer Tran") was employed as an officer with Metro. Officer Tran is a United States citizen and upon information and belief, a resident of Clark County, Nevada. Officer Tran is being sued in his individual capacity. Tran is being sued because he allowed Tashii to be killed and did not intervene to prevent his death.

10. At all times relevant herein, Defendant Officer Michael Flores (hereinafter "Officer Flores") was employed as an officer with Metro. Officer Flores is a United States citizen and, upon information and belief, a resident of Clark County, Nevada. Officers Flores is being sued in his individual capacity. Flores is being sued because he allowed Tashii to be killed and did not intervene to prevent his death.

11. At all times relevant herein, all of the actions of Defendants were performed under the color of state law and pursuant to their authority as police officers.

## ALLEGATIONS COMMON TO ALL CLAIMS

### THE INCIDENT THAT TRIGGERED THE INSTANT LAWSUIT

12. Sunday, May 14, 2017 was Mother's Day. On that day, Metro Officer Kenneth Lopera intentionally killed Trinita Farmer's son, Tashii Brown. Sergeant Travis Crumrine, Officer Michael Tran and Officer Michael Flores failed to intervene and allowed Lopera to choke Tashii to death.

13. While on duty on May 14, 2017, Mother's Day, Metro Officers Lopera and Lif decided to go to The Venetian to imbibe some coffee. The Venetian Resort Hotel Casino (hereinafter "The Venetian") is located at 3355 Las Vegas Blvd. South, Las Vegas, Nevada 89109.

14. At approximately 12:50 a.m., Tashii peacefully approached Officer Lopera and Officer Lif. Tashi appeared to be sweating profusely and asked the officers if they knew where a drinking fountain was located.

15. Officer Lopera asked Tashi why he was sweating. Tashii replied that he had just run from across the street because he believed people were following him. He displayed symptoms of mental confusion and appeared to be suffering from a mental disorder. During this time, there was no indication that Tashii caused any harm to any persons or caused any property damage, or that he presented an immediate threat of death or serious bodily injury to anyone, including Officer Lopera and Officer Lif. Tashii was unarmed.

16. Instead of providing help, Tashii was chased and attacked by Lopera. Tashii became frightened and attempted to run from the officers and was chased by Officer Lopera through a hallway and to an outside roadway on The Venetian property.

17. During the pursuit, Officer Lopera alleges that Tashii was attempting to steal a passing vehicle. However, Decedent Tashii did not attempt to either open the tailgate of the vehicle nor did he attempt to open the driver's side door.

18. Once Officer Lopera caught up to Tashii outside, Defendant Lopera deployed and discharged his Electronic Control Device ("ECD"), i.e. Taser, causing neuromuscular incapacitation, or "NMI." Officer Lopera told Tashii to get on his stomach several times but never gave Tashii a reasonable opportunity to comply with commands before cycling the ECD again. Officer Lopera utilized his ECD a total of seven (7) times.

19. Subsequently, Officer Lopera holstered his ECD and proceeded to deliver several blows to Tashii's face and head while he was on the ground. Upon information and belief Officer Lopera struck Tashii in the face and head approximately twelve (12) times.

20. After using the ECD on Famer seven (7) times and striking him a dozen times in the face and head, Officer Lopera choked Tashii for over a minute while Crumrine, Flores and Tran enabled the choke hold by not only screaming and cursing at Tashii, but by holding him while Lopera killed him. Importantly, Crumrine, Flores and Tran failed to intervene to prevent Lopera from killing Tashii.

21. Sergeant Crumrine, Officer Tran, and Officer Flores were present at the time of the use of force by Officer Lopera. Sergeant Crumrine, Officer Tran, and Officer Flores observed and were aware, or should have been aware, that Officer Lopera was using excessive force during Officer Lopera's application of the choke hold. Sergeant Crumrine, Officer Tran, and Officer Flores failed to intervene to prevent the use of such excessive force by Officer Lopera.

22. At the time of the incident, Sergeant Crumrine was Officer Lopera's commanding officer. When Sergeant Crumrine arrived at the scene of the incident, Officer Lopera, within seconds, administered the choke hold on Tashii. After Officer Tran arrived at the scene, Tran told Lopera to leg go of Tashii. Officer Lopera continued to administer the choke hold for forty-four (44) seconds.

Sergeant Crumrine was present and observed Officer Lopera's application of the choke hold. Sergeant Crumrine, as Officer Lopera's commanding officer, failed to intervene to prevent the use of such excessive force at any time while Officer Lopera continued to apply the choke hold.

23. Similarly, Officer Tran and Flores arrived at the scene of the incident during Officer Lopera's application of the choke hold. At the time of the incident, Sergeant Crumrine was Officer Tran's and Flores's commanding officer. Officer Tran and Flores handcuffed Tashii and observed him while Officer Lopera was applying the choke hold. Officer Tran and Flores failed to intervene to prevent the use of such excessive force while Officer Lopera continued to apply the choke hold.

24. Upon Officer Lopera's release of the choke hold, Tashii was rendered unconscious. Officers requested medical personnel and attempted to revive Tashii when they observed he was not breathing. Tashii never breathed again. Lopera, Crumrine, Flores and Tran killed Tashi.

25. After killing Tashii, Lopera bragged to Officer Lif, "I started punching him. Rear nakeded his ass." Lopera also bragged to Flores and Officer Rybacki "I start waling on the dude and then I rear mounted and choked him out." Lopera bragging to fellow officers after killing Tashii is just one shameful example of the rampant culture at Metro that tolerates, and even congratulates, the use of excessive force.

### METRO'S UNCONSTITUTIONAL POLICIES, PRACTICES, AND CUSTOMS CONSTITUTED THE MOVING FORCE THAT CAUSED TASHII'S DEATH AND VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHTS

26. At all times relevant herein, there has been a policy, practice, and custom to slant most police investigations of officer's use of excessive force in favor of the involved officer. The goal of the investigations is to concoct excuses for excessive force instead of investigating these matters in a neutral fashion and punishing the involved officer when appropriate. As a result, Metro Officers feel empowered to place harmless citizens in impermissible and lethal choke holds, knowing that Metro will offer them protection after the fact.

27. At all times relevant herein, there was a policy, practice, and custom at Metro to slant internal reviews of an officer's use of excessive force in favor of the involved officer. Officers would use excessive force and then get a paid vacation while Metro "investigated" the shootings. Metro called this paid vacation "administrative leave." Sometimes, the officers would be off for several

months while the families of their victims mourned the loss and injustice visited upon them. At the end of the internal review period by an internal Metro committee, there would be no finding of fault against the officer and no real punishment.

28. At all times relevant herein, there was a policy, practice, and custom at Metro to allow their officers to perform unapproved and improper choke holds on unarmed citizens.

29. At all times relevant herein, Metro allowed the use and performance of unapproved and improper choke holds as disproportionate use and show of force in situations where said techniques were not needed.

30. At all times relevant herein, there was a failure by Metro to properly train its officers to intervene to prevent the use of excessive force by another officer.

31. At all times relevant herein, there was a failure by Metro to properly train its officers on how to recognize and respond to an unarmed citizen exhibiting symptoms of mental confusion and mental disorders.

32. The use of any choke hold has been banned by law enforcement agencies across the United States, including police departments in cities such as Houston, Miami, Dallas, Richmond (CA), North Las Vegas and Henderson (NV), and Louisville (Louisville Metropolitan Police Department).

33. Clark County District Attorney Steve Wolfson stated that there would be a public use of force review to air the findings of the investigation in the death of Tashii.

34. One result of Metro's aforementioned policies, practices, and customs has been that there are serious constitutional violations being imposed on Nevada citizens. Metro officers fear no real consequences so they do as they please, all the while knowing that there is policy, practice, and custom to let them off the hook in the end.

35. Innocent lives have been irreparably changed and lost at the hands of Metro officers who act contrary to the law, but all while consistent with Metro policy, practice, and custom. Tashii's life was taken by a Metro Officer acting pursuant to these unconstitutional policies, practices, and procedures.

## METRO'S INADEQUATE TRAINING PROGRAM AND POLICIES CAUSED TASHII'S DEATH, AND VIOLATED THE PLAINTIFF'S CONSTITUTIONAL RIGHTS

36. At all relevant times herein, Metro did not have a command official for managing use of force reforms.

37. At all relevant times herein, Metro did not have an organizational structure to facilitate use of force reforms.

38. At all relevant times herein, Metro needed to revise and reform its low level, intermediate, and deadly force review processes, but did not do so.

39. At all relevant times herein, Metro needed to revise and reform its chokehold review process, but did not do so.

40. At all relevant times herein, to identify use of force and choke hold gaps, Metro needed to consolidate units that deal with training and administrative investigations and ensure that lessons learned from choke hold incidents were incorporated back into training. Metro did not take these actions at all relevant times herein.

41. At all relevant times herein, Metro needed to raise the executive involvement in the management of the Use of Force Review Board, but did not do so.

42. At all relevant times herein, Metro did not conduct department-wide fair and impartial police training that includes a focus on excessive use of force. A disproportionate number of people involved in excessive use of force incidents involving officers were black.

43. At all relevant times herein, Metro's use of force policy was deficient and a comprehensive revision was required.

44. At all relevant times herein, Metro did not have a "sanctity of human life" statement in its use of force policy.

45. Under Ninth Circuit case authority that was published prior to the killing of Tashii, Metro needed to create an "intermediate level of force" policy and train its officers on the policy. Metro did not revise the policy or train its officers prior to killing of Tashii.

46. Prior to the killing of Tashii, Metro needed to revise its choke hold policy. Metro did not do so prior to the incident involving Tashii.

47. Prior to the killing of Tashii, Metro did not require a duty of its officers to intervene or intercede when observing excessive force. In the Tashii incident, multiple officers were on the scene when Officer Lopera had Tashii in an improper choke hold. None intervened or interceded to stop the abusive conduct that led to his death.

48. Prior to the killing of Tashii, Metro needed to restrict when an officer may use a choke hold when a citizen did not pose a threat. Tashii was unarmed and presented no threat when Officer Lopera used his ECD seven (7) times and struck him in the face and head roughly a dozen times prior to applying a choke hold.

49. Prior to the killing of Tashii, the evaluation component of Metro's use of force policy was inadequate. The department did not focus on department-wide trends in evaluating the policy. Several of those trends were present and contributed to the death of Tashii. Implementation of policies to address these trends would have presented Famer's death.

50. Prior to the killing of Tashii, Metro did not use reality-based incident command scenarios to train supervisors and officers on the management and direction of multiple officers during critical incidents. As a result, tactical errors and fatalities were more prevalent when multiple officers were on the scene. In Tashii's incident, there were multiple officers on the scene.

51. Prior to the killing of Tashii, Metro needed to focus on constitutional policing in its use of force training. It did not implement a focus on constitutional policing in the use of force training. As a result Tashii was killed, at least in part, due to Metro's failure to train as needed.

52. Prior to the killing of Tashii, Metro was unable to determine whether officer training requirements were being properly monitored. As a result, lapses in training occurred with one or more officers on the scene, which resulted in the death of Tashii.

53. Prior to the killing of Tashii, Metro needed to establish a capacity to conduct comprehensive excessive force reviews that were administrative in nature. This would contribute to department-wide training. Due to the lack of review, there was a lack of training.

54. Prior to the killing of Tashii, Metro needed to develop more specific use of force finding categories in order to provide greater accountability. The lack of specific categories resulted in lack of accountability.

55.   Prior to the killing of Tashii, the Use of Force Board rarely issued disciplinary or corrective action, due to both structural constraints and a lack of institutional oversight. As a result, the department did not identify gaps in training, policy, and tactics.

### FIRST CLAIM FOR RELIEF

*(Violation of Civil and Constitutional Rights of Familial Association Under 42 U.S.C. § 1983)*

***Against Defendants Lopera, Tran, Flores, and Crumrine***

56.   Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 55 as if fully set forth herein.

57.   As mother to Tashii, Plaintiff Trinita possesses a Fourteenth Amendment substantive due process right to familial association with Tashii based on her right and interest in liberty, of which she was deprived.

58.   Officer Lopera, acting under the color of state law, and without due process of law, violated Plaintiff Trinita's rights by the use of unreasonable, unjustified, excessive force and violence, and caused injuries which resulted in Tashii's death, all without any provocation or threat. Defendant's act violated and deprived Plaintiff Trinita of her liberty interests arising out of her relationship with Tashii.

59.   Sergeant Crumrine, Officer Tran, Officer Flores, acting under the color of state law, and without due process of law violated Trinita's rights by failing to intercede to prevent the use of excessive force by Officer Lopera, causing injuries which resulted in Tashii's death, all without any provocation or threat. Defendants act violated and deprived Plaintiff Trinita of her liberty interests arising out of her relationship with Tashii.

60.   The severity of the circumstances to which the Officer Lopera was responding to was minor. Tashii had no weapons. Officer Lopera had used his ECD on Tashii seven (7) times and struck him in the face and head roughly a dozen times prior to administering the choke hold. Tashii was eventually handcuffed and under the control of four (4) different officers while Tashii continued to be placed in the choke hold.

61.   Sergeant Crumrine, as the commanding officer at the time of the incident, with the addition of Officer Tran and Flores failed to assess the surrounding events and intercede to prevent

the use of such excessive force. Tashii posed no overt threat to officer safety or civilian safety at the outset or any point throughout the incident.

62. Under Metro's use of force policy, which is not appropriately enforced, "[a]ny officer present and observing another officer using force that is clearly beyond that which is objectively reasonable under the circumstances shall, when in a position to do so, safely intercede to prevent the use of such excessive force. Officers shall promptly report these observations to a supervisor."

63. Tashii was not actively resisting arrest or actively trying to evade arrest by flight. By all accounts, he was mentally distressed, confused and unable to follow directions.

64. Tashii first approached Officer Lopera and Lif seeking help before he turned and ran down a hallway. Officer Lopera eventually caught up to Tashii and used his ECD seven (7) times and then struck Tashii in the face and head roughly a dozen times. The situation was controlled prior to Officer Lopera striking Tashii in the face and head.

65. The tactic of using the ECD seven (7) times to subdue Tashii and then striking him in the face and head roughly a dozen time was unnecessary and punishing. Placing Tashii in an improper choke hold for over a minute was extremely excessive, dangerous, and lethal.

66. Officer Lopera clearly intended to harm Tashii physically when he used his ECD and struck Tashii in the face and head repeatedly. He then proceeded to put him in a choke hold. Choking Tashii, an unarmed and mentally distressed individual, for over a minute was dangerously excessive under the circumstances.

67. Officer Lopera intended to inflict force well beyond what was required by a legitimate law enforcement objective. He did not need to kill or physically harm Tashii under the circumstances.

68. Officer Tran, Officer Flores, and Sergeant Travis Crumrine clearly intended to allow Officer Lopera to inflict force well beyond what was required by a legitimate law enforcement objective. Officer Tran, Officer Flores, and Sergeant Travis Crumrine needed to intercede to prevent Officer Lopera from killing or physically harming Tashii.

69. There were alternative methods available to Officer Lopera on the scene. Officer Lopera did not have to use his ECD on Tashii seven (7) times. Tashii did not need to be put in an improper choke hold for over a minute. Officer Lopera could have instead used a number of low level

use of force techniques to handle the situation before under taking such life threatening actions. All the while, Officer Tran, Officer Flores, and Sergeant Travis Crumrine could have interceded while Officer Lopera had Tashii in a choke hold.

70. Officer Lopera, Officer Tran, Officer Flores, and Sergeant Travis Crumrine acted with deliberate indifference to safety when Officer Lopera killed Tashii. Lopera did not stop choking Tashii for over a minute even after other officers arrived on the scene and told him to let go while doing nothing to intervene or intercede. Crumrine, Flores and Tran had a duty to intercede, intervene, and, if necessary, use physical force to stop Lopera. Crumrine, Flores and Tran breached this duty.

71. The behavior of the Metro officers in killing Tashi shocked the conscience of the community at large. Las Vegas television, radio, and newspaper outlets repeatedly reported on the story. Community leader have expressed utter shock and dismay about the killing of Tashii Brown. National newspapers and media programs have aired the story. Tashii's story is likewise published on the internet.

72. As a legal, direct, and proximate result of these Defendants' conduct, Plaintiff sustained damages for which she is entitled to compensation, including severe emotional, psychological, and mental pain and suffering. Additionally, the video Tashii's death is constantly broadcast and replayed on television. Trinita frequently must hurry and shut the television off when a story about Tashii is broadcast. Finally, every Mother's Day is and will be a reminder that her son was senselessly and illegally killed by Metro and its officers.

73. These acts and others committed by Officer Lopera, Officer Tran, Officer Flores, and Sergeant Travis Crumrine deprived Plaintiff Trinita of her rights secured to her by the Fourteenth Amendment to the United States Constitution.

74. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff Trinita is entitled to reasonable attorney fees and costs against Officer Lopera, Officer Tran, Officer Flores, and Sergeant Travis Crumrine.

. . . .

. . . .

. . . .

## SECOND CLAIM FOR RELIEF

*(Violation of Civil and Constitutional Rights of Familial Association Under 42 U.S.C. § 1983)*

***Against Metro under a legal theory of municipal liability***

75. Plaintiff repeats and re-alleges the allegations of paragraph 1 through 74 as if fully set forth herein.

76. At all times relevant herein, Officer Lopera, Officer Tran, Officer Flores, and Sergeant Travis Crumrine acted under the color of state law.

77. As mother to Tashii, Plaintiff Trinita possesses a Fourteenth Amendment substantive due process right to familial association with Tashii based on her right and interest in liberty, of which she was deprived.

78. As describe more fully throughout this Complaint, Metro had several policies that amounted to deliberate indifference to Plaintiff Trinita's constitutional rights. Moreover, these policies have shocked the conscious of the Las Vegas community at large for years. These policies were the moving force, cause in fact, and proximate cause of violations to Plaintiff Trinita's constitutional rights. These policies are referred to throughout this Complaint.

79. At all times relevant herein, Officer Lopera acted pursuant to a longstanding practice or custom of Metro to utilize improper choke holds, where no such use of force was needed.

80. At all times relevant herein, Officer Lopera, Officer Tran, Officer Flores, and Sergeant Travis Crumrine acted pursuant to and in conformity with the policies and practices delineated in the instant Complaint.

81. Prior to Tashii's death, Metro acted customarily in a fashion, as described in this Complaint, which amounted to a deliberately indifferent failure to adopt policies necessary to prevent constitutional violations. One example is the repeated use of excessive force of unarmed individuals. Another example is observing officers' failure to intercede to prevent the use of excessive force by another officer. These excessive use of force policies, practices, and customs have been repeatedly allowed to stay in place by policymakers at Metro in the years prior to Tashii's death.

82. Metro is liable to the Plaintiff under this cause of action for its failure to train the officers and supervisors involved in the incident, as noted above. The existing training program is

inadequate, (2) the training policies, and lack thereof, amount to deliberate indifference to the rights of the people with whom the police come into contact, including Tashii, and (3) the deliberate indifference caused the constitutional violation at issue in this case.

83. As a legal, direct, and proximate result of Metro's unconstitutional policies and training, Plaintiff sustained damages for which she is entitled to compensation, including severe, emotional, psychological, and mental pain and suffering. Additionally, the video Tashii's death is constantly broadcast and replayed on television. Trinita frequently must hurry and shut the television off when a story about Tashii is broadcast. Finally, every Mother's Day is and will be a reminder that her son was senselessly and illegally killed by Metro and its officers.

84. These policies by Metro and failure to train its officers deprived Plaintiff Trinita of rights secured to her by the Fourteenth Amendment to the United States Constitution.

85. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff Trinita is entitled to reasonable attorney fees and costs against Officer Lopera, Officer Tran, Officer Flores, and Sergeant Travis Crumrine.

## THIRD CLAIM FOR RELIEF

*(Violation of Civil and Constitutional Rights of Familial Association Under 42 U.S.C. § 1983)*

*(Supervisor Liability)*

***Against Sergeant Crumrine***

86. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 85 as if fully set forth herein.

86. Plaintiff had her constitutional right to familial association under the 14th Amendment to the Constitution violated by Sergeant Crumrine, Lopera, Flores and Tran.

87. Sergeant Crumrine, Lopera's supervisor on the scene, had knowledge of Lopera choking Tashii to death, and consented, agreed and acquiesced to the Lopera's unconstitutional use of deadly force.

88. Sergeant Crumrine knew that Lopera, Flores and Tran were engaged in a deprivation of constitutional rights and was deliberately indifferent to the consequences of Lopera's actions.

89. As a legal, direct, and proximate result of Crumrine's actions, Plaintiff sustained damages for which she is entitled to compensation, including severe, emotional, psychological, and mental pain and suffering. Additionally, the video Tashii's death is constantly broadcast and replayed on television. Trinita frequently must hurry and shut the television off when a story about Tashii is broadcast. Finally, every Mother's Day is and will be a reminder that her son was senselessly and illegally killed by Metro and its officers.

90. Crumrine's actions were a legal, direct and proximate cause of the deprivation Plaintiff's rights secured to her by the Fourteenth Amendment to the United States Constitution.

91. Crumrine's actions, in collaboration with the actions of the other Defendants, shocked the conscious of the community at large.

92. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to reasonable attorney fees and costs against Sergeant Crumrine.

**WHEREFORE**, Plaintiff prays for a judgment in favor of Plaintiff and against Defendants as follows:

1. For compensatory damages, including wrongful death damages under federal and state law, in the amount to be proven at trial;
2. For pre- and post- judgment interest at the maximum legal rate;
3. As to the first and second causes of action for costs and attorney fees incurred in prosecuting this action in accordance with 42 U.S.C. § 1988;
4. For costs of suit as to all causes of action; and
5. For such further relief as the Court may deem just, proper, and appropriate.

DATED this **13th** day of May, 2018 (Mother's Day).

RESPECTFULLY SUBMITTED,

**LAGOMARSINO LAW**

ANDRE M. LAGOMARSINO, ESQ.
Nevada Bar No. 6711
3005 West Horizon Ridge Parkway, Suite 241
Las Vegas, Nevada 89052
*Attorney for Plaintiff*