**Marquis Aurbach Coffing**
Craig R. Anderson, Esq.
Nevada Bar No. 6882
Tom W. Stewart, Esq.
Nevada Bar No. 14280
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
canderson@maclaw.com
tstewart@maclaw.com
   Attorneys for Defendants LVMPD, Crumrine, Tran, and Flores

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TRINITA FARMER,<br><br>                Plaintiff,<br><br>vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a political subdivision of the State of Nevada; KENNETH LOPERA, individually; TRAVIS CRUMRINE, individually; MICHAEL TRAN, individually and MICHAEL FLORES, individually,<br><br>                Defendants. | Case Number:<br><br>2:18-cv-00860-GMN-VCF<br><br>**DEFENDANT LVMPD'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DEFENDANT LVMPD'S (1) CIRT REPORT; (2) CIRT STATEMENT OF KEN LOPERA; AND (3) REVIEW BOARD MINUTES AND DOCUMENTS** |

Pursuant to Fed.R.Civ.P. 26(b)(1), Defendant Las Vegas Metropolitan Police Department ("LVMPD"), by and through its counsel of record Craig R. Anderson, Esq. of Marquis Aurbach Coffing, hereby responds to Plaintiff's Motion to Compel filed with this Court on December 21, 2018. (ECF No. 38.) This response is based on the pleadings and papers on file herein, the following Memorandum of Points and Authorities, and the arguments of counsel that may be heard by this Court pursuant to LR 78-2.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

This is a 42 U.S.C. § 1983 a lawsuit. On May 14, 2017, Tashii Farmer ("Decedent") died during a struggle with Las Vegas Metropolitan Police Department ("LVMPD")

MAC:14687-087 3609710_1 1/3/2019 11:10 AM

officers. Plaintiff Trinita Farmer ("Plaintiff") is the Decedent's mother. According to her lawsuit, the LVMPD officers violated her Fourteenth Amendment right to a familial relationship with her adult son.

Because LVMPD officers were involved in the Decedent's passing, LVMPD conducted a thorough and comprehensive investigation into the incident. All of the factual evidence obtained during the investigation has been provided to the Plaintiff. In addition, LVMPD has produced all policy changes, allowed testimony regarding any and all discipline the officers received, and produced all related training. The only tangible items not produced by LVMPD related to the subject incident are: (1) LVMPD's Critical Incident Report Team's report ("CIRT Report"); (2) documents and tangible items from LVMPD's Critical Incident Review Process ("CIRP"); and (3) defendant Kenneth Lopera's compelled CIRT statement.

The CIRT Report and CIRP documents are intertwined. LVMPD takes its critical incident investigations seriously. As such, it promises its participants and investigators confidentiality to ensure frank and candid discussions regarding LVMPD's internal policies and procedures. At the conclusion of the investigation, the involved LVMPD investigators deliberate and determine whether any LVMPD policies and/or practices were violated and whether any modifications or changes are necessary to existing policies. The CIRT conclusions are then presented during the CIRP process. LVMPD designed this entire process with the Deliberative Process Privilege in mind. Because Plaintiff has all of the documents relied upon by CIRT and CIRP, LVMPD has satisfied its disclosure obligations under the law.

With respect to defendant Lopera's CIRT statement, LVMPD has protected the statement due to criminal charges levied against Lopera and the threat of future federal criminal charges. Lopera has invoked his Fifth Amendment right with respect to the statement. LVMPD has informed Plaintiff it will produce the statement if Lopera agrees or this Court orders its production.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. RELEVANT FACTS

#### 1. The Subject Incident

On May 14, 2017, the Decedent approached LVMPD officers Lopera ("Lopera") and Ashley Lif ("Lif") at the Venetian Hotel & Casino. The Decedent complained that people were following him and then ran from the officers into an "employee only" area of the Venetian. Lopera followed the Decedent outside of the Venetian and into the street. Believing that the Decedent was attempting to carjack a passing vehicle, Lopera attempted to take the Decedent into custody. Lopera and the Decedent eventually ended up on the ground where Lopera placed the Decedent in a neck restraint. After Lopera initiated the neck restraint, Sergeant Crumrine arrived on scene. About thirty seconds after Crumrine arrived, officers Tran and Flores arrived. Crumrine, Tran, and Flores had no information as to what had occurred prior to their arrival. Pursuant to their training, the late-arriving officers immediately intervened by issuing orders and physically assisting Lopera with the handcuffing of the Decedent. About 70 seconds after Crumrine arrived and 40 seconds after Tran and Flores arrived, the Decedent was successfully handcuffed. It is undisputed that all officers (including Lopera) ceased using any force the moment handcuffing was complete. After handcuffing, the officers realized that the Decedent was unresponsive and began CPR efforts. Unfortunately, he passed away. The parties dispute the cause of death.

#### 2. LVMPD's Internal Investigations into the Event

On the date of the subject incident, LVMPD had detailed policies and practices regulating internal investigations and internal evaluations concerning officer involved deaths and other critical incidents. The purpose of these policies is to improve the internal and external review process while simultaneously respecting the personal rights of officers and the deliberations of LVMPD's top highest ranking officials. The following briefly addresses the policies and procedures that were utilized regarding the subject case.

MAC:14687-087 3609710_1 1/3/2019 11:10 AM

### a.   The FIT and CIRT Investigations

LVMPD has two distinct tracks of review. The first track is conducted by LVMPD's Force Investigation Team ("FIT"). *See* Sheriff Lombardo Declaration attached as **Exhibit A** at ¶9. The purpose of the homicide investigation is to gather all available information and evidence to assist the District Attorney's Office in determining whether any criminal conduct occurred during the critical incident. *Id.* at ¶10, *see also* LVMPD policy 5/109.02 attached as **Exhibit B**.[1]  In the Farmer case, Det. Trevor Alsup was the lead FIT investigator.[2] Ex. A at ¶9.

The second track of review is handled by LVMPD's Critical Incident Review Team ("CIRT"). Ex. A at ¶10. The purpose of the CIRT investigation is purposefully distinct from the FIT team. *Id.* CIRT is a team of full-time employees who conduct a mandatory investigation into all critical incidents. CIRT was specifically created with the Deliberative Process Privilege in mind. *Id.* at ¶3-6. The team and its purpose is designed to allow for candid and honest dialogue within LVMPD to allow for the creation or modifications of LVMPD's policies and training. *Id.* at ¶10. In other words, the purpose of CIRT is to act as a self-critical process to assist in improving and evaluating LVMPD's policies and training. Thus, the FIT investigation is a traditional investigation looking at criminality, while the CIRT tract is an "administrative" evaluation of the incident.

Although the FIT and CIRT investigations are distinct and independent, there is obviously some commonality between the two processes. Ex. A at ¶11. LVMPD policy establishes the general protocol for both. Once a critical incident occurs, it is the responsibility of any officers on the scene to secure the scene and immediately notify LVMPD communications and a supervisor. *Id.* at ¶12. The first supervisor on scene

---

[1] LVMPD Post Use of Force Policy 5/109.01. This policy is authenticated in the Declaration of Sherriff Lombardo at Ex. A at ¶10.

[2] All documents created by Det. Alsup and his FIT report have been produced in this litigation. Declaration of Craig R. Anderson attached as **Exhibit C**.

assumes responsibility as the "Incident Commander." *Id.* at ¶13. In this capacity, the first supervisor addresses the most immediate and urgent needs, such as directing medical attention to those who need it and continuing security of the scene. In conjunction, the first supervisor is directed to obtain a "Public Safety Statement" from officers. *Id.* The public safety statement consists of responses to a pre-defined series of questions which are as follows:

1. Is anyone injured? If so, where are they located?

2. Are there any outstanding suspects? If so, what is their description, direction and mode of travel? How long have they gone? What crime(s) are they wanted for? What weapons are they armed with?

3. Were you involved in an officer involved shooting?

4. Approximately where were you when you fired the rounds?

5. Approximately how many rounds did you fire and in what direction did you fire them?

6. Do you know if any other officers fired any rounds?

7. Is it possible the suspect fired rounds at you? If so, from what direction were the rounds fired?

8. Are there any weapons or evidence that needs to be secured/protected? Where are they located?

9. Are you aware of any witnesses? If so, what is their location?

The information acquired in the Public Safety Statement is consistent with the initial objectives and responsibilities of the first supervisor: (1) determine the number and identify of those needing medical attention; (2) determine information about suspects who are not accounted for; and (3) gather information necessary to secure the scene for further investigation. *Id.* at ¶14.

While the first supervisor is performing these tasks, LVMPD Communications Section is responsible for notifying the personnel who are to respond to the scene. Among others, FIT and CIRT are notified. *Id.* at ¶15. Once all essential personnel are on scene, an initial briefing is held. Both FIT and CIRT attend the initial briefing. *Id.* at ¶¶16-17.

MAC:14687-087 3609710_1 1/3/2019 11:10 AM

Following that, FIT coordinates a walk-through of the scene with the involved officer. *Id.* at ¶17. If there is more than one officer involved, multiple walk-throughs will be conducted. The walk-through is designed to identify locations where physical evidence might be found and to provide the FIT investigators with a general understanding of the scene. *Id.* at ¶17. The walk-throughs are not recorded. CIRT is excluded from the walk-through procedure, but is briefed on it by the homicide investigators. *Id.* CIRT is also given an opportunity to perform its own walk-through after FIT. *Id.* At that point, the responsibilities and protocol of FIT and CIRT differ. *Id.* at ¶18. FIT continues its investigation until completion and then presents the information to the District Attorney's Office. CIRT's involvement remains solely internal.

The critical differences between FIT and CIRT procedures are two-fold. First, the purpose and objective of the FIT process is to gather information necessary to determine whether any conduct of an officer involved in the critical incident constitutes a criminal act. *Id.* at ¶19. The purpose and objective of the CIRT process is to evaluate the application, misapplication, lapse or neglect of training, policies and procedures in order to determine whether modifications of any internal rules or practices are required. *Id.* And, second, given the criminal nature of the FIT process, officers are - and must be - afforded the right to decline to submit to an interview. *Id.* at ¶19. On the contrary, given the administration nature of the CIRT process, officers involved in a shooting are compelled to submit themselves to an interview as they are in the best position to assist in the improvement of internal procedures. *Id.* at ¶20. Officers face termination if they refuse to give a CIRT statement. FIT is required to share all of its information with CIRT. CIRT, on the contrary, is strictly prohibited from sharing compelled information from involved officers with FIT. *Id.*

Once FIT's investigation is complete, it turns its FIT Report and accompanying evidence to the District Attorney's Office for review. The District Attorney then determines

MAC:14687-087 3609710_1 1/3/2019 11:10 AM

whether criminal charges are necessary and then it holds a Fatality Review Board to make its findings public.

After the District Attorney makes its final decision and releases the FIT file back to LVMPD, the CIRT team finishes its internal investigation. The CIRT team uses the FIT Report and the statements CIRT compelled from involved officers. After obtaining all factual evidence, the CIRT team then creates its CIRT Report. *Id.* at ¶24. The purpose of the CIRT Report is to report the facts of the incident and then analyze the facts for potential tactical errors, training errors, and/or policy violations. The CIRT team then recommends to the sheriff any new training and/or new policies it believes may be necessary and/or beneficial to LVMPD. *Id.* at ¶26; Ex. B. The CIRT team members are assured of the confidentiality of their reports and forbidden to disseminate the report. Id. at ¶26. Obviously, the reason behind this confidentiality is to ensure the CIRT team is candid and honest regarding their evaluation and not concerned with potential legal or internal fallout resulting from their decisions/opinions. Thus, the goal of the CIRT Report is to candidly evaluate LVMPD's policies and procedures, identify potential problem areas, and make recommendations to the sheriff regarding policy and training. *Id.*

### b. The Critical Incident Review Process

After the CIRT Report is completed, the next step is the Critical Incident Review Process ("CIRP"). The CIRT Report identifies specific officers who must attend and participate in the CIRP process. *Id.* at ¶¶27-33. Prior to the CIRP, the summoned officers are allowed to view the CIRT Report. They do not receive a copy of the CIRT Report. *Id.* at ¶29.

CIRP is conducted in two parts. The first part is the Use of Force Review Board ("UFRB"). UFRB evaluates only the actions of the officer(s) who actually used force (in this case Lopera, Crumrine, Tran and Flores). *Id.* at ¶28. The UFRB does not involve tactical issues and does not evaluate policy. After the UFRB ends, the second part occurs. The second part is called a Tactical Review Board ("TRB"). *Id.* at ¶28. The TRB evaluates

MAC:14687-087 3609710_1 1/3/2019 11:10 AM

the tactics employed during the officer involved shooting. The TRB evaluates the performance of any officer involved in the scenario. **No reports are created during the CIRP.** *Id.* at ¶30.

According to Plaintiff, CIRT "found that Defendant Flores, Tran, and Crumrine all failed to intervene during the incident." ECF No. 38 at p.13:1-3. This is patently false. Initially, CIRT identified all <u>potential</u> policy and training violations with respect to all involved officers. It identified failure to intervene as a potential issue and investigated the issue with respect to Crumrine, Tran, and Flores. Kirkegard Depo. at p.49:24-p.50:12; p.57:7-14, attached as **Exhibit F**.[3] After reviewing all of the available evidence, CIRT concluded that Crumrine, Tran, and Flores did intervene. *Id.* at p.51:10-25. Thus, Plaintiff's unsupported representation to the contrary is false. Plus, it is obvious that Crumrine, Tran, and Flores intervened. The video of the event show that all three officers immediately intervened by giving orders to Lopera to stop the neck restraint and by assisting with the handcuffing of Farmer within seconds of their arrival.

In short, Plaintiff's false representation that LVMPD's CIRT team "found" that the officers failed to intervene is irresponsible and demonstrably false. Rather, the evidence shows that the CIRT team identified potential training and policy issues, investigated the issues, and then reached sound conclusions.

**B.    RELEVANT PROCEDURAL AND DISCOVERY HISTORY**

Plaintiff Trinita Farmer is the mother the Decedent Tashii Farmer. The Decedent and his biological children have filed a separate action against these same defendants. *See Estate of Tashii S. Farmer v. LVMPD, et. al.*, 2:17-cv-01946-JCM-PAL. In the subject case, Plaintiff alleges that the individual defendant officers interfered with her Fourteenth Amendment right to familial relations with the Decedent. ECF No. 4 at First Claim for Relief. In addition, Plaintiff alleges supervisory liability against defendant Crumrine and a

---

[3] Casey Kirkegard was the lead CIRT investigator and gave testimony in the Decedent's lawsuit.

MAC:14687-087 3609710_1 1/3/2019 11:10 AM

*Monell*[4] claim against defendant LVMPD. *Id.* at Second and Third Causes of Action. In the *Monell* claim, Plaintiff alleges that an LVMPD policy, custom, or practice allowed the defendant officers to interfere familial relationship with the Decedent.

On October 26, 2018, the LVMPD Defendants served their Initial Disclosure Statement in this matter. The disclosure was comprehensive, identifying fifty-one (51) witnesses and 4,667 pages of exhibits. *See* LVMPD Defendants' Initial Disclosure Statement, attached as **Exhibit D**, without exhibits. On December 11, 2016, LVMPD supplemented the disclosure statement and provided all body worn camera videos from the subject incident. *See* LVMPD's First Supplemental to Disclosure Statement, attached as **Exhibit E**, exhibits omitted. LVMPD's Initial Disclosure Statement included the entire FIT file and the entire CIRT file – except for defendant Lopera's compelled CIRT statement. *See* Ex. D at Exhibits 24-62; *see also* Ex. C at ¶4. Thus, except for Lopera's CIRT statement, Plaintiff is in possession of all the factual evidence generated by CIRT and CIRP. The only documents LVMPD has withheld are the actual CIRT Report, the Tactical Review Board Memorandum, the Use of Force Board Memorandum, and Lopera's statement. Ex. C at ¶2. Further, Plaintiff is aware of the CIRT and CIRP results – i.e., (1) criminal charges were recommended against Lopera, (2) Lopera retired before his disciplinary proceedings could be completed, (3) Crumrine was not confirmed as a sergeant and returned to his position as a police officer, and (4) Tran and Flores were found in violation of LVMPD's body worn camera policy.

### III. LEGAL ARGUMENT

Plaintiff's motion to compel requests that LVMPD produce three specific items: (1) LVMPD CIRT Report; (2) Lopera's CIRT Statement; and (3) LVMPD's CIRP documents. ECF No. 38 at p.1:22-24.

---

[4] *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978).

MAC:14687-087 3609710_1 1/3/2019 11:10 AM

It is LVMPD's understanding that Lopera is exercising his Fifth Amendment right with respect to his CIRT statement. Therefore, LVMPD will defer to his response on that issue. LVMPD has informed Plaintiff that it will produce the statement pursuant to a waiver from Lopera or a court order. As a result, LVMPD's argument focuses on the CIRT Report and the memorandums and other tangible items created during the CIRP process. The argument regarding both items is identical and it is LVMPD's position that the deliberative process protects their disclosure.

### A. THE DELIBERATIVE PROCESS PRIVILEGE

The federal common law recognizes a Deliberate Process Privilege. *Federal Trade Comm'n v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). The purpose of this privilege is to enhance and support communication incidental to improving the quality of governmental policies, procedures and practices. *Id.* citing *NRLB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). The Deliberative Process Privilege extends to documents which "reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *Id.* citing *NRLB*, 421 U.S. at 150. The ultimate purpose of the privilege is to protect the quality of agency decisions by promoting frank and independent discussion among those responsible for governmental decision-making. *Warner Commc'ns*, 742 F.2d at 1161.

Two threshold requirements must be first met prior to proceeding to the ultimate analysis involving a balance between the competing interests in confidentiality versus disclosure. First, the information must be "pre-decisional" - - meaning that it must exist as a foundational element of the deliberative process in which the material was utilized. *Id.* In this case, the entire CIRT process and creation of the CIRT Report took place in advance of the final decision making of the Sheriff and the subsequent officer discipline. Thus, the CIRT Report and CIRP easily satisfy the first threshold requirement.

The second inquiry is whether the material is "deliberative in nature, containing opinions, recommendations or advice about agency policies." *Id.* When the information is

"purely factual" and "does not reflect deliberative process," it is not protected. *Id*. Here, there is a factual element to the CIRT Report. This factual information in the CIRT investigation is "interwoven" with deliberative material. *Id*. citing *Binion v. Dep't of Justice*, 695 F.2d 1189, 1193 (9th Cir. 1983). Despite this factual overlap, the primary purpose of the CIRT Report is to critically evaluate LVMPD's policy and training and make policy recommendations. In addition, the involved officers are not treated as passive conveyors of rote information. Rather, the involved officers are encouraged and expected to actively participate in the review process, candidly evaluating the effectiveness of their performance in the situation as well as the role of LVMPD policies which were applied and the quality of training received in advance of the encounter. Thus, although some of the information contained in the CIRT Report is factual, it is not "purely factual" and is part of the deliberative process. Still, LVMPD has voluntarily produced all of the factual evidence generated and used to create the CIRT Report. It is undeniable that due to the critical nature of the CIRT Report that it meets this second threshold requirement.

Once these two threshold requirements are met, a court is then instructed to analyze the material under a four part balancing test:

(1) The relevance of the evidence;

(2) The availability of other evidence;

(3) The government's role in the litigation; and

(4) The extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions.

*Warner Commc'ns*, 742 F.2d at 1161. The following establishes that three of the four factors weigh heavily in favor of extending the Deliberative Process Privilege to the CIRT Report and CIRP.

MAC:14687-087 3609710 1 1/3/2019 11:10 AM

### B. LVMPD'S CIRT REPORT AND CIRP DOCUMENTS ARE PROTECTED BY THE DELIBERATIVE PROCESS PRIVILEGE

CIRT was specifically created with the Deliberative Process Privilege in mind. Ex. A at ¶¶3-6. LVMPD intended to create an investigatory process that fostered candid and forthright evaluation into officer involved shootings so that better policies and training could be created. It is purposefully separate from FIT so that all "purely factual" material would be available through FIT, but all policy formulation information will remain privileged. Here, LVMPD has made all factual evidence/information created by both FIT and CIRT available to Plaintiff. Ex. C at ¶3. The only information Plaintiff is missing is LVMPD's critical evaluation of: (1) LVMPD's policies and procedures, (2) the tactics used in this matter, (3) recommendations for future policies and training, and (4) Lopera's CIRT Statement.

#### 1. Prong 1: Relevance of the Evidence

Plaintiff takes the simple position that CIRT Report is relevant because it summarizes and evaluates factual evidence obtained during the investigation into the death of the Decedent. ECF No. 38 at p.9:7-10. It is clear that Plaintiff does not understand the Deliberative Process Privilege as she takes a rather simplistic approach. According to Plaintiff, the Ninth Circuit has "expressly held that facts and evidence are not protected by the Deliberative Process Privilege." *Id.* at p.9:12-17. This is why LVMPD voluntarily produced all facts and evidence that it complied during the investigation – to comply with the law and protect the deliberative nature of the CIRT Report. Plaintiff has all of the facts and information necessary to create her own CIRT Report. All LVMPD is seeking to protect is pre-decisional information that is deliberative in nature.

Also, LVMPD's post-incident evaluation of its policies and procedures is not relevant. This case is about constitutional violations – not policy violations. The issue is whether the defendant officers violated Plaintiff's constitutional rights. It is not about internal policies that are more restrictive than the Constitution. *See Scott v. Harris*, 127

MAC:14687-087 3609710_1 1/3/2019 11:10 AM

S.Ct. 1769, 1773 n. 1 (2007) (it is "irrelevant to our analysis whether [defendant] had permission to take the precise actions he took); *Davis v. Scherer*, 468 U.S. 183, 193-96 (1984) (It is settled law that a violation of departmental policy does not equate with constitutional unreasonableness); *Abney v. Coe*, 493 F.3d 412 (4th Cir. 2007). And, any complaints, discipline, or criticism of the involved officers are remedial measures taken after the incidents are inadmissible as subsequent remedial measures. *See* Fed.R.Evid. 403; *see also Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417-18 (9th Cir. 1986) (internal affairs evidence regarding the subject incident is inadmissible at trial because the investigation and results constitute subsequent remedial measures prohibited by Fed.R.Evid. 403).

In short, Plaintiff is in possession of all "relevant" evidence and materials. LVMPD has provided all of the information it accumulated with respect to the subject incident. If this Court were to order production of the CIRT Report and CIRP documents, it is almost certain that LVMPD investigators will be more cautious and less candid when formulating opinions and criticisms in future cases.

### 2. Prong 2: The Availability of Other Evidence

LVMPD has produced all evidence used to create the CIRT Report – except Lopera's CIRT statement. The reason is because LVMPD recognizes that factual evidence could potentially be admissible. In addition, Plaintiff is well aware of the policy changes that LVMPD made as a result of the subject incident (Ex. D at Exhibit #20) and the discipline the individual defendant officers received.

### 3. Prong 3: The Government's Role in the Litigation

LVMPD is a defendant in this litigation.

### 4. Prong 4: Hindrance of Frank and Independent Discussion

The final (and most important) prong of the Deliberative Process Privilege's four part test is whether disclosure of the CIRT Report and CIRP documents will hinder future frank and independent discussion of critical incidents. The answer to that question is "absolutely." CIRT was created for the sole purpose of creating a privileged document that

MAC:14687-087 3609710_1 1/3/2019 11:10 AM

allows LVMPD to self-critically analyze and evaluate itself for the purpose of bettering its policies, procedures, and/or training. If disclosure of the CIRT report is compelled, the damage to the objectives of the CIRT process would be irreparable. If the CIRT investigators and involved officers recognize that the critical and candid opinions they include in their reports or statements may eventually become public and part of a civil suit, it is likely that the involved officers will act more cautiously with their opinions. In other words, the CIRT officers and involved officers will likely become less forthcoming and less candid with their assessments. Disclosure of the CIRT report will undoubtedly have a chilling effect upon the admirable goals of the CIRT process. The CIRT procedures for policy improvement at LVMPD are delicate and depend upon trust and candor. Once these reports are made public, the process will be permanently altered to its detriment.

### 5. Deliberative Process Conclusion

For the above reasons, it is respectfully submitted that the CIRT report is protected by the Deliberative Process Privilege and is considered privileged information. Further, applying the balancing test of *Warner Comm'cn,* it is clear that LVMPD's interest in maintaining the privileged nature of the CIRT report substantially outweighs the Plaintiff's interest in disclosure. For this reason, the court should extend the Deliberative Process Privilege to the CIRT report.

### C. KENNETH LOPERA'S CIRT STATEMENT

LVMPD recognizes that Kenneth Lopera potentially has a Fifth Amendment right with respect to his CIRT statement. Therefore, LVMPD defers to Officer Lopera's motion on this issue.

## IV. CONCLUSION

Based upon the above, LVMPD respectfully requests that this Court issue the following order:

(1) Plaintiff's motion to compel LVMPD's CIRT Report is denied as it is protected by the Deliberative Process Privilege; and

MAC:14687-087 3609710_1 1/3/2019 11:10 AM

(2) LVMPD's use of force board decisions and memorandums are protected by the Deliberative Process Privilege.

Dated this __3__ day of January, 2019.

MARQUIS AURBACH COFFING

By_____
Craig R. Anderson, Esq.
Nevada Bar No. 6882
10001 Park Run Drive
Las Vegas, Nevada 89145
Attorneys for Defendants LVMPD,
Crumrine, Tran, and Flores

### CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANT LVMPD'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DEFENDANT LVMPD'S (1) CIRT REPORT; (2) CIRT STATEMENT OF KEN LOPERA; AND (3) REVIEW BOARD MINUTES AND DOCUMENTS** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the __3rd__ day of January, 2019.

☒ I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Andre M. Lagomarsino, Esq.
Lagomarsino Law
aml@lagomarsino.law.com
denise@lagomarsinolaw.com
jassell@lagomarsinolaw.com
justin@lagomarsinolaw.com
skylar@lagomarsinolaw.com
stephanie@lagomarsinolaw.com
stephanielazo@lagomarsinolaw.com
Attorney for Plaintiff

MAC:14687-087 3609710_1 1/3/2019 11:10 AM

Daniel R. McNutt, Esq.
Matthew C. Wolf, Esq.
drm@mcnuttlawfirm.com
lah@mcnuttlawfirm.com
mcw@mcnuttlawfirm.com
cliftonwolf@gmail.com
jnw@mcnuttlawfirm.com
Attorney for Defendant Lopera

☐ I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants: n/a

_____
an employee of Marquis Aurbach Coffing

MAC:14687-087 3609710_1 1/3/2019 11:10 AM