**Marquis Aurbach Coffing**
Craig R. Anderson, Esq.
Nevada Bar No. 6882
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
canderson@maclaw.com
  Attorneys for Defendants LVMPD, Crumrine, Tran, and Flores

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| TRINITA FARMER, | Case Number: |
|---|---|
| Plaintiff, | 2:18-cv-00860-GMN-VCF |
| vs. | |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a political subdivision of the State of Nevada; KENNETH LOPERA, individually; TRAVIS CRUMRINE, individually; MICHAEL TRAN, individually and MICHAEL FLORES, individually, | **LVMPD DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION TO MAGISTRATE FERENBACH'S ORDER (ECF NO. 48) PURSUANT TO LR IB 3-1(A)** |
| Defendants. | |

Defendants, Las Vegas Metropolitan Police Department ("LVMPD"), Officer Travis Crumrine, Officer Michael Tran, and Officer Michael Flores, by and through their attorney of record, Craig R. Anderson, Esq. of Marquis Aurbach Coffing, hereby file their response to Plaintiff's Objection to Magistrate Ferenbach's Order (ECF No. 48) Pursuant to LR IB 3-1(a). (ECF No. 51.)

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.      INTRODUCTION**

This is a 42 U.S.C. § 1983 a lawsuit. On May 14, 2017, Tashii Farmer ("Decedent") died during a struggle with LVMPD officers. Plaintiff Trinita Farmer ("Plaintiff") is the Decedent's mother. According to her lawsuit, the LVMPD officers violated her Fourteenth Amendment right to a familial relationship with her adult son.

MAC:14687-087 3673037_1 3/19/2019 11:39 AM

Because LVMPD officers were involved in the Decedent's passing, LVMPD conducted a thorough and comprehensive investigation into the incident. All of the factual evidence obtained during the investigation has been provided to the plaintiff. In addition, LVMPD has produced all policy changes, allowed testimony regarding any and all discipline the officers received, and produced all related training.

During discovery, LVMPD <u>did</u> object to producing its internal Critical Incident Team Report ("CIRT Report") and LVMPD's Critical Incident Review Process ("CIRP") memorandums arguing they were protected by the Deliberative Process Privilege. LVMPD also withheld defendant Kenneth Lopera's CIRT statement due to defendant Lopera's assertion of his Fifth Amendment rights. Plaintiff filed a motion to compel LVMPD's CIRT Report, CIRP memorandums, and Lopera's CIRT statement.

On February 19, 2019, Magistrate Judge Ferenbach entertained oral argument on plaintiff's motion to compel. After reviewing the pleadings and entertaining oral argument, Judge Ferenbach correctly held that LVMPD's internal analysis and deliberations regarding its policies and procedures was protected by the deliberative process privilege. Magistrate Ferenbach ordered LVMPD to redact all protected information and produce the redacted CIRT Report and CIRP memorandums. The LVMPD defendants complied with Magistrate Ferenbach's order and produced redacted copies of the CIRT Report and CIRP memorandums and, LVMPD also produced defendant Kenneth Lopera's compelled CIRT statement.

Plaintiff now objects to Judge Ferenbach's order arguing that she is entitled to the redacted information.

II.  **LEGAL STANDARDS**

Both Fed.R.Civ.P. 72 and Local Rule IB 3-1 provide that a district court judge may "reconsider any pre-trial matter referred to a magistrate judge . . . where it has been shown that the magistrate judge's ruling is ***clearly erroneous to contrary law***." *See* Local Rule IB 1(a) (emphasis added). A finding is "clearly erroneous" when although there is evidence to

support it, where the reviewing court after reviewing the evidence is left with a definite and firm conviction that a mistake has been committed. *See Ideal Elec. Co. v. Flowserve Corp.*, 230 F.R.D. 603 (D.Nev. 2005). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Manley v. Zimmer*, 3:11-cv-00636-RCJ-WGC, 2014 WL 4471662, *4 (D.Nev. 2014) (citing *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F.Supp. 2d 70, 74 (N.D.N.Y. 2000)).

### III. **LEGAL ARGUMENT**

Plaintiff objects to Magistrate Ferenbach's Order arguing that the portions of LVMPD's CIRT Report and CIRP memorandums that are protected by the deliberative process privilege should be produced. Specifically, plaintiff claims that: (1) CIRT detective Kasey Kirkegard's deposition testimony defeats the privilege, (2) Magistrate Ferenbach failed to take into account defendant LVMPD's policies, and (3) Magistrate Ferenbach failed to take into account any case law.

#### A. THE DELIBERATIVE PROCESS PRIVILEGE AND THE CIRT PROCESS

##### 1. **The federal common law recognizes a deliberate process privilege.**

The federal common law recognizes a deliberate process privilege. *Federal Trade Comm'n v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). The purpose of this privilege is to enhance and support communication incidental to improving the quality of governmental policies, procedures and practices. *Id.* citing *NRLB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). The deliberative process privilege extends to documents which "reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *Id.* citing *NRLB*, 421 U.S. at 150. The ultimate purpose of the privilege is to protect the quality of agency decisions by promoting frank and independent discussion among those responsible for governmental decision-making. *Warner Commc'ns*, 742 F.2d at 1161.

MAC:14687-087 3673037_1 3/19/2019 11:39 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Two threshold requirements must be first met prior to proceeding to the ultimate analysis involving a balance between the competing interests in confidentiality versus disclosure. First, the information must be "pre-decisional" - - meaning that it must exist as a foundational element of the deliberative process in which the material was utilized. *Id.* In this case, the entire CIRT process and creation of the CIRT Report took place in advance of the final decision making of the Sheriff and the subsequent officer discipline. Thus, the CIRT Report and CIRP easily satisfy the first threshold requirement.

The second inquiry is whether the material is "deliberative in nature, containing opinions, recommendations or advice about agency policies." *Id.* When the information is "purely factual" and "does not reflect deliberative process," it is not protected. *Id.*

Once these two threshold requirements are met, a court is then instructed to analyze the material under a four part balancing test:

(1) The relevance of the evidence;

(2) The availability of other evidence;

(3) The government's role in the litigation; and

(4) The extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions.

*Warner Commc'ns*, 742 F.2d at 1161. Judge Ferenbach viewed the CIRT Report and CIRP memorandums *in camera* and concluded the deliberative process privilege protected sections that involved policy analysis and recommendations.

### 2. **LVMPD'S CIRT report and CIRP documents are protected by the deliberative process privilege.**

CIRT was specifically created with the deliberative process privilege in mind. Sheriff Joseph Lombardo Declaration attached as **Exhibit A** at ¶¶3-6. On the date of the subject incident, LVMPD had detailed policies and practices regulating internal investigations and internal evaluations concerning officer involved deaths and other critical incidents. The purpose of these policies is to improve the internal and external review

process while simultaneously respecting the personal rights of officers and the deliberations of LVMPD's top highest ranking officials. The following briefly addresses the policies and procedures that were utilized regarding the subject case.

### a. The CIRT Team

LVMPD has two distinct tracks of review. The first track is conducted by LVMPD's Force Investigation Team ("FIT"). Ex. A at ¶9. The purpose of the homicide investigation is to gather all available information and evidence to assist the District Attorney's Office in determining whether any criminal conduct occurred during the critical incident. *Id.* at ¶10. In the Farmer case, Det. Trevor Alsup was the lead FIT investigator. Ex. A at ¶9.

The second track of review is handled by LVMPD's CIRT. Ex. A at ¶10. The purpose of the CIRT investigation is purposefully distinct from the FIT team. *Id.* CIRT is a team of full-time employees who conduct a mandatory investigation into all critical incidents. CIRT was specifically created with the deliberative process privilege in mind. *Id.* at ¶3-6. The team and its purpose is designed to allow for candid and honest dialogue within LVMPD to allow for the creation or modifications of LVMPD's policies and training. *Id.* at ¶10. In other words, the purpose of CIRT is to act as a self-critical process to assist in improving and evaluating LVMPD's policies and training. Thus, the FIT investigation is a traditional investigation looking at criminality, while the CIRT tract is an "administrative" evaluation of the incident.

Although the FIT and CIRT investigations are distinct and independent, there is obviously some commonality between the two processes. Ex. A at ¶11. LVMPD policy establishes the general protocol for both. Once a critical incident occurs, it is the responsibility of any officers on the scene to secure the scene and immediately notify LVMPD communications and a supervisor. *Id.* at ¶12. The first supervisor on scene assumes responsibility as the "Incident Commander." *Id.* at ¶13. In this capacity, the first supervisor addresses the most immediate and urgent needs, such as directing medical attention to those who need it and continuing security of the scene. In conjunction, the first

supervisor is directed to obtain a "Public Safety Statement" from officers. *Id.* The public safety statement consists of responses to a pre-defined series of questions which are as follows:

1. Is anyone injured? If so, where are they located?

2. Are there any outstanding suspects? If so, what is their description, direction and mode of travel? How long have they gone? What crime(s) are they wanted for? What weapons are they armed with?

3. Were you involved in an officer involved shooting?

4. Approximately where were you when you fired the rounds?

5. Approximately how many rounds did you fire and in what direction did you fire them?

6. Do you know if any other officers fired any rounds?

7. Is it possible the suspect fired rounds at you? If so, from what direction were the rounds fired?

8. Are there any weapons or evidence that needs to be secured/protected? Where are they located?

9. Are you aware of any witnesses? If so, what is their location?

The information acquired in the Public Safety Statement is consistent with the initial objectives and responsibilities of the first supervisor: (1) determine the number and identify of those needing medical attention; (2) determine information about suspects who are not accounted for; and (3) gather information necessary to secure the scene for further investigation. *Id.* at ¶14.

While the first supervisor is performing these tasks, LVMPD Communications Section is responsible for notifying the personnel who are to respond to the scene. Among others, FIT and CIRT are notified. *Id.* at ¶15. Once all essential personnel are on scene, an initial briefing is held. Both FIT and CIRT attend the initial briefing. *Id.* at ¶¶16-17.

MAC:14687-087 3673037_1 3/19/2019 11:39 AM

Following that, FIT coordinates a walk-through of the scene with the involved officer. *Id.* at ¶17. If there is more than one officer involved, multiple walk-throughs will be conducted. The walk-through is designed to identify locations where physical evidence might be found and to provide the FIT investigators with a general understanding of the scene. *Id.* at ¶17. The walk-throughs are not recorded. CIRT is excluded from the walk-through procedure, but is briefed on it by the homicide investigators. *Id.* CIRT is also given an opportunity to perform its own walk-through after FIT. *Id.* At that point, the responsibilities and protocol of FIT and CIRT differ. *Id.* at ¶18. FIT continues its investigation until completion and then presents the information to the District Attorney's Office. CIRT's involvement remains solely internal.

The critical differences between FIT and CIRT procedures are two-fold. First, the purpose and objective of the FIT process is to gather information necessary to determine whether any conduct of an officer involved in the critical incident constitutes a criminal act. *Id.* at ¶19. The purpose and objective of the CIRT process is to evaluate the application, misapplication, lapse or neglect of training, policies and procedures in order to determine whether modifications of any internal rules or practices are required. *Id.* And, second, given the criminal nature of the FIT process, officers are - and must be - afforded the right to decline to submit to an interview. *Id.* at ¶19. On the contrary, given the administration nature of the CIRT process, officers involved in a shooting are compelled to submit themselves to an interview as they are in the best position to assist in the improvement of internal procedures. *Id.* at ¶20. Officers face termination if they refuse to give a CIRT statement. FIT is required to share all of its information with CIRT. CIRT, on the contrary, is strictly prohibited from sharing compelled information from involved officers with FIT. *Id.*

Once FIT's investigation is complete, it turns its FIT Report and accompanying evidence to the District Attorney's Office for review. The District Attorney then determines

whether criminal charges are necessary and then it holds a Fatality Review Board to make its findings public.

After the District Attorney makes its final decision and releases the FIT file back to LVMPD, the CIRT team finishes its internal investigation. The CIRT team uses the FIT Report and the statements CIRT compelled from involved officers. After obtaining all factual evidence, the CIRT team then creates its CIRT Report. *Id.* at ¶24. The purpose of the CIRT Report is to report the facts of the incident and then analyze the facts for potential tactical errors, training errors, and/or policy violations. The CIRT team then recommends to the sheriff any new training and/or new policies it believes may be necessary and/or beneficial to LVMPD. *Id.* at ¶26. The CIRT team members are assured of the confidentiality of their reports and forbidden to disseminate the report. *Id.* at ¶26. Obviously, the reason behind this confidentiality is to ensure the CIRT team is candid and honest regarding their evaluation and not concerned with potential legal or internal fallout resulting from their decisions/opinions. Thus, the goal of the CIRT Report is to candidly evaluate LVMPD's policies and procedures, identify potential problem areas, and make recommendations to the sheriff regarding policy and training. *Id.*

### b. The CIRP Process

After the CIRT Report is completed, the next step is the Critical Incident Review Process ("CIRP"). The CIRT Report identifies specific officers who must attend and participate in the CIRP process. *Id.* at ¶¶27-33. Prior to the CIRP, the summoned officers are allowed to view the CIRT Report. They do not receive a copy of the CIRT Report. *Id.* at ¶29.

CIRP is conducted in two parts. The first part is the Use of Force Review Board ("UFRB"). UFRB evaluates only the actions of the officer(s) who actually used force (in this case Lopera, Crumrine, Tran and Flores). *Id.* at ¶28. The UFRB does not involve tactical issues and does not evaluate policy. After the UFRB ends, the second part occurs. The second part is called a Tactical Review Board ("TRB"). *Id.* at ¶28. The TRB evaluates

the tactics employed during the officer involved shooting. The TRB evaluates the performance of any officer involved in the scenario. No reports are created during the CIRP. *Id.* at ¶30.

### B. PLAINTIFF'S OBJECTIONS ARE NOT WELL TAKEN AND MAGISTRATE FERENBACH'S ORDER IS NOT "CLEARLY ERRONEOUS OR CONTRARY TO LAW."

#### 1. Detective Kirkegard's testimony is irrelevant.

LVMPD CIRT detective Kasey Kirkegard was the detective in charge of the Farmer case. Detective Kirkegard's team investigated the incident, gathered all facts, and prepared the CIRT Report. The CIRT Report set forth the CIRT team's version of the facts and then analyzed these facts against LVMPD's policies and procedures. The CIRT team then documented policy violations and recommended policy changes in the CIRT Report. Magistrate Ferenbach ordered that the CIRT Report's factual sections must be produced but instructed the LVMPD defendants to redact all sections titled "Analysis" and "Conclusions."

According to plaintiff, Magistrate Ferenbach erred because "facts and evidence are not protected by the deliberative process privilege." (ECF No. 51 at p.6:22-23 (citations omitted)). Lost on plaintiff is the fact that she has all the "purely factual material generated by CIRT." Plaintiff is only lacking the CIRT team's analysis and deliberations. In other words, plaintiff is only missing the CIRT team's opinions and recommendations - the exact information protected by the deliberative process privilege.

Attached to LVMPD's opposition to the motion to compel is a declaration from Sheriff Lombardo specifically addressing CIRT's and CIRP's relationship to the deliberate process privilege. *See* Ex. A. Plaintiff's objection ignores this declaration and instead argues that non-policymaker Detective Kirkegard's testimony defeats the privilege. According to plaintiff, Detective Kirkegard testified (1) the CIRT Report is not "completely confidential", (2) that CIRT statements might be used against defendant Lopera in criminal court, (3) she was not part of the deliberation process as to whether the policies were

MAC:14687-087 3673037_1 3/19/2019 11:39 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

violated, and (4) she had never heard of the deliberate process privilege. (ECF No. 51 at p.7:5-18.) Each of plaintiff's arguments is easily defeated.

First, the CIRT Report is not "completely confidential" because the involved officers and the CIRP members get to review it before the CIRP process. Second, CIRT statements are kept confidential unless another law trumps its confidentiality such as *Garrity* warnings (*see Garrity v. New Jersey*, 385 U.S. 493 (1967)). Third, the CIRT detective only provides the information to the CIRP board members who then deliberate as to whether the facts constitute policy violations - thus, Detective Kirkegard did not deliberate with the CIRP members. Fourth, the fact that Detective Kirkegard has never heard of the deliberate process privilege is irrelevant because Sheriff Lombardo is the chief policymaker who approves the CIRT and CIRP policies and procedures.

### 2. Plaintiff knows the policy violations that LVMPD found.

Plaintiff's second argument is that Magistrate Ferenbach "failed to take into account LVMPD's policies and policy violations, which are extremely relevant and important to plaintiff's *Monell* claim." (ECF No. 51 at p.8:1-3.) This argument is disingenuous.

Plaintiff has been provided all factual evidence regarding all policy violations found by LVMPD against the involved officers. Further, plaintiff has been provided all evidence and documents regarding any and all policy changes that resulted from the subject incident. Plaintiff has been allowed to depose all defendants (except Lopera who has invoked his Fifth Amendment right) and question them regarding their discipline and policy violations. Again, all that plaintiff is lacking is the collaborative process and deliberations that occurred to determine the proper discipline for the officers and the proper policy changes. This is the exact information that the deliberative process privilege protects. Thus, plaintiff is not "completely in the dark" as to the discipline and policy issues.

### 3. Magistrate Ferenbach properly applied the privilege.

Both parties thoroughly briefed the deliberative process privilege issue before Magistrate Ferenbach. From the bench, Magistrate Ferenbach gave a thoughtful and

MAC:14687-087 3673037_1 3/19/2019 11:39 AM

carefully considered opinion. Plaintiff is upset that Magistrate Ferenbach "did not address [her cited] cases. . ." There is no obligation that a magistrate judge must address both parties' cited cases. Rather, the only obligation is that the magistrate judge apply the deliberative process privilege in a reasonable manner. Here, it is clear that Magistrate Ferenbach read the cases and then reviewed the CIRT Report and CIRP memorandums and determined what information the privilege covered. It is also clear from Magistrate Ferenbach's oral pronouncements from the bench that he was familiar with the privilege and how to apply it.

## IV. **CONCLUSION**

Based upon the above, Magistrate Ferenbach's order should be affirmed. Plaintiff's objection does not set forth any grounds justifying setting the order aside.

Dated this 19 day of March, 2019.

MARQUIS AURBACH COFFING

By _____
Craig R. Anderson, Esq.
Nevada Bar No. 6882
10001 Park Run Drive
Las Vegas, Nevada 89145
Attorneys for Defendants LVMPD,
Crumrine, Tran, and Flores

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **LVMPD DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION TO MAGISTRATE FERENBACH'S ORDER (ECF NO. 48) PURSUANT TO LR IB 3-1(A)** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 19th day of March, 2019.

☒ I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

> Andre M. Lagomarsino, Esq.
> Lagomarsino Law
> aml@lagomarsino.law.com
> denise@lagomarsinolaw.com
> jassell@lagomarsinolaw.com
> justin@lagomarsinolaw.com
> skylar@lagomarsinolaw.com
> stephanie@lagomarsinolaw.com
> stephanielazo@lagomarsinolaw.com
> Attorney for Plaintiff
>
> Daniel R. McNutt, Esq.
> Matthew C. Wolf, Esq.
> drm@mcnuttlawfirm.com
> lah@mcnuttlawfirm.com
> mcw@mcnuttlawfirm.com
> cliftonwolf@gmail.com
> jnw@mcnuttlawfirm.com
> Attorney for Defendant Lopera

☐ I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants: n/a

/s/ Sherri Mong
an employee of Marquis Aurbach Coffing

MAC:14687-087 3673037_1 3/19/2019 11:39 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

# Exhibit A – Declaration of Sheriff Joseph Lombardo

# DECLARATION OF JOSEPH LOMBARDO

I, Joseph Lombardo, do hereby declare:

1. I am currently the duly elected Sheriff of Clark County, Nevada. I am the Chief Law Enforcement Officer of the Las Vegas Metropolitan Police Department ("LVMPD") pursuant to NRS §280.121. I have personal knowledge of the facts stated herein, except for those stated on information and belief, and, as to those, I believe them to be true. I am competent to testify as to the facts stated herein in a court of law and will so testify if called upon.

2. This declaration is submitted in support of LVMPD's Opposition to Plaintiff's Motion to Compel Defendant LVMPD's (1) CIRT Report; (2) CIRT Statement of Ken Lopera; and (3) Review Board Minutes and Documents.

## CIRT BACKGROUND

3. LVMPD's Critical Incident Review Team ("CIRT") is an internal team that investigates LVMPD officer uses of deadly force and other high-risk police operations.

4. The purpose of CIRT is to candidly and objectively evaluate the officer's decision-making, tactics, supervision, actual use of force, and other actions or approaches that could have generated a different outcome to the critical incident.

5. CIRT's conclusions, criticisms, and opinions are used to create and modify current LVMPD policies and training. In other words, CIRT's primary purpose is to improve LVMPD's policies, training, and tactics to minimize risks and maximize safety in future police operations.

6. Due to CIRT's important role within LVMPD, CIRT was created with the understanding that all critical information generated by CIRT would be privileged.

## CIRT AND FIT

7. In order to achieve the self-critical goals, CIRT works closely with LVMPD's Force Investigation Team ("FIT"). After any use of deadly force by an officer, FIT conducts a criminal investigation of the incident. The following explains the relationship between CIRT and FIT.

8. When deadly force is used by an officer, there are two distinct tracks of review by LVMPD.

9. The first track of review is conducted by FIT. The purpose of FIT is to gather all available information and evidence to assist the District Attorney's Office in determining whether any criminal conduct occurred during the officer's use of deadly force. In the Tashii Farmer incident, Trevor Alsup was the lead FIT investigator.

10. The second track of review is handled by CIRT. The purpose of CIRT is to improve both individual and LVMPD performance by evaluating LVMPD policies, training, and/or tactics. Officer cooperation with CIRT is mandatory- not voluntary. Therefore, all participants are assured of the privileged nature of CIRT in order to obtain candid and honest participation. The current LVMPD policy regarding CIRT is found in LVMPD's Policy 5/109.02.

11. Although the FIT and CIRT investigations are distinct and independent, there is commonality between the two investigations.

12. Once there is an incident involving the use of deadly force, it is the responsibility of any officer on scene to secure the scene and immediately notify LVMPD Communications and an immediate supervisor.

13. The first supervisor on scene assumes responsibility as the "incident commander." In this capacity, the first supervisor addresses the most immediate and urgent needs, such as directing medical attention to those who need it and continuing security of the scene. In conjunction, the first supervisor is directed to obtain a "Public Safety Statement" from the involved officers. The Public Safety Statement consists of responses to pre-defined series of questions found in LVMPD Policy 6/002.03.

14. The information acquired in the Public Safety Statement is consistent with the initial objectives and responsibilities of the first supervisor: (1) determine the number and identity of those needing medical attention; (2) determine information about suspects who are not accounted for; and (3) gather information necessary to secure the scene for further investigation.

15. While the first supervisor is performing these tasks, LVMPD communications is responsible for notifying personnel who are to respond to the scene. At this point FIT and CIRT are notified.

16. Once all essential personnel are on scene, an initial briefing is held. Both FIT and CIRT attend the initial briefing.

17. Following the initial briefing, FIT coordinates a walk-through of the scene with the involved officer (the officer is allowed to refuse to participate in the walk-through). If there is more than one officer involved, multiple walk-throughs will be conducted. As noted above, the walk-through is designed to identify locations where physical evidence might be found and to provide FIT investigators with a general understanding of the scene. CIRT does not accompany any walk-through that includes an involved officer. However, CIRT is later briefed and participates in a walk-through with FIT or crime scene analysts.

18. At this point, the responsibilities and protocols of FIT and CIRT differ. FIT continues its investigation for the presentation of its information to the District Attorney's Office. Meanwhile, CIRT's involvement remains solely for internal review. FIT is required to share all of its information with CIRT. CIRT, on the other hand, is strictly prohibited from sharing compelled information from the involved officers with FIT.

19. There are critical differences between the FIT and CIRT procedures. The purpose and objective of the FIT process is to gather information necessary to determine whether any conduct of an officer involved in the deadly use of force constitutes a criminal act. Given the criminal nature of the FIT process, the officers are afforded the right to decline to submit to an interview.

20. The purpose and objective of the CIRT process is to evaluate the application, misapplication, lapse or neglect of training, policies and procedures in order to determine whether modifications of any internal rules or practices are required. Contrary to FIT, given the administrative nature of the CIRT process, the involved officers in a deadly use of force are compelled to submit themselves to an interview, as they are in the best position to assist in the improvement of internal procedures.

21. Once FIT's investigation is complete, it turns the FIT report and accompanying evidence to the District Attorney's Office for review. The District Attorney then determines whether criminal charges are necessary and it holds a Fatality Review Board to make its findings

1  public. In the Tashii Farmer case, the FIT investigators recommended criminal charges against
2  Kenneth Lopera.

3      22.    CIRT does not complete its report until after the District Attorney has issued its
4  finding. The reason is because the criminal case takes precedence over any civil actions or
5  administrative actions.

6      23.    In this case, CIRT had access to all of the information obtained by FIT. In addition,
7  CIRT had access to the witness statements compelled by CIRT. Thus, the primary evidentiary
8  difference between the FIT and CIRT investigations are the compelled statements.

9      24.    Once the criminal investigation and CIRT investigations are complete, CIRT
10  creates its CIRT Report.

11      25.    The purpose of the CIRT Report is to report the facts of the in-custody death and
12  then analyze the facts for potential tactical errors, policy violations, or general areas where
13  improvements can be made. In addition, the CIRT Report identifies tactics and policies that were
14  correctly applied.

15      26.    CIRT members are assured of the privileged nature of the reports and are forbidden
16  to disseminate the report. The reason is to ensure that CIRT is candid and honest regarding their
17  evaluation. It is also to assure that CIRT is not concerned with potential legal or internal fallout
18  resulting from any opinions or decisions. In short, the goal of the CIRT report is to candidly,
19  honestly, and openly evaluate LVMPD's policies, training, tactics, and procedures with respect to
20  a specific event. CIRT then makes recommendations for future actions with respect to policies,
21  training, or procedures.

**CRITICAL INCIDENT REVIEW PROCESS**

23      27.    After a CIRT report is completed, the matter is then moved to the Critical Incident
24  Review Process ("CIRP").

25      28.    CIRP is conducted in two-parts. The first part is the Use of Force Review Board,
26  which only evaluates the officer(s) that actually used force. The second part is the Tactical Review
27  Board, which evaluates the performance of any officer involved in the critical incident.

29. The involved officers are mandated to attend CIRP. Each involved officer is allowed to view the CIRT Report, but **the officers do not receive a copy of the CIRT Report.**

30. CIRP does not itself create any reports.

31. The CIRT Report created in the Tashii Farmer matter has been kept confidential since its creation and finalization.

32. I have personally reviewed the report. The report analyzes the event and evaluates current training and policies. The report recommends changes to both policy and training.

33. Once CIRP is complete, a CONFIDENTIAL interoffice memorandum is completed by both the Tactical Review Board and Use for Force Board chairperson. The memorandums are provided to me. The memorandums contain a brief factual summary and a summary of the board findings. I review the memorandums and then accept or reject the board's recommendations.

34. Once all matters related to the incident have concluded, LVMPD publishes a summary including adopted policies, training changes and other adopted recommendations. In the Tashii Farmer case, policy changes, such as the reclassification of the Lateral Vascular Neck Restraint from a low-level use of force to an intermediate use of force, as well as officer discipline have been made public. However, the process in reaching those decisions have been kept confidential to protect the integrity of the process and to assure that future critical incident investigators will feel confident that their opinions and the decision making process will remain confidential.

35. I declare under penalty of perjury, under the laws of the State of Nevada (NRS 53.045), that the foregoing is true and correct.

Dated this ___ day of January, 2019.

_____
Joseph Lombardo