# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

TRINITA FARMER,

        Plaintiff,

vs.

LAS VEGAS METROPOLITAN POLICE DEPARTMENT, *et al.*,

        Defendants

Case No.: 2:18-cv-00860-GMN-VCF

**ORDER**

Pending before the Court is the Motion to Dismiss, (ECF No. 12), filed by Defendants Las Vegas Metropolitan Police Department ("LVMPD"), Sergeant Travis Crumrine ("Sergeant Crumrine"), Officer Michael Tran ("Officer Tran"), and Officer Michael Flores ("Officer Flores") (collectively, "LVMPD Defendants"), to which Defendant Kenneth Lopera ("Officer Lopera") filed a Joinder, (ECF No. 13). Plaintiff Trinita Farmer ("Plaintiff") filed a Response, (ECF No. 27), and LVMPD Defendants filed a Reply, (ECF No. 36).

Also pending before the Court is Plaintiff's Motion for Summary Judgment, (ECF No. 69). Officer Lopera filed a Response, (ECF No. 70), to which LVMPD Defendants filed a Joinder, (ECF No. 71). Plaintiff then filed a Reply, (ECF Nos. 74, 76).[1]

For the reasons discussed below, the Court **DENIES** the Motion to Dismiss, (ECF No. 12), and **DENIES** Plaintiff's Motion for Summary Judgment, (ECF No. 69).

---

[1] Also pending before the Court is Officer Lopera's Motion for Leave to File Surreply, (ECF No. 75), which concerns Plaintiff's Motion for Summary Judgment. Plaintiff filed a Response, (ECF No. 79), and Officer Lopera filed a Reply, (ECF No. 80). For good cause appearing, Officer Lopera's Motion for Leave to File Surreply is **GRANTED**.

## I. BACKGROUND

Plaintiff is the mother of Tashii Brown ("Tashii"). (First Am. Compl. ("FAC") ¶ 3, ECF No. 4). Tashii died on May 14, 2017, from the actions of Officer Lopera of the Las Vegas Metropolitan Police Department. (*Id.* ¶ 5). According to the First Amended Complaint, his death was ruled a homicide. (*Id.*).

The First Amended Complaint alleges that on May 14, 2017, Tashii approached Officers Lopera and Lif in the Venetian Resort Hotel and Casino, while they were on duty. (*Id.* ¶ 13). Tashii was sweating profusely, and he asked if they knew where he could find a drinking fountain. (*Id.* ¶ 14). Officer Lopera then asked why he was sweating, to which Tashii responded that "he had just run from across the street because he believed people were following him." (*Id.* ¶ 15). There was no indication that Tashii had caused any harm to persons or property, nor was he an immediate threat. (*Id.*). However, after Officer Lopera's questions, Tashii became frightened and ran. (*Id.* ¶ 16).

Tashii ran to an outside roadway on the Venetian's property; and Officer Lopera caught up with him near a vehicle, which, according to Officer Lopera, Tashii was attempting to steal.[2] Officer Lopera then deployed his taser, causing Tashii to become incapacitated. (*Id.* ¶ 18). Lopera also ordered Tashii to get on his stomach—though Tashii did not have time to comply before being struck again and again by Lopera's taser, for a total of seven times. (*Id.* ¶¶ 18–19). After using his taser, Officer Lopera "proceeded to deliver several blows to Tashii's face and head while he was on the ground." (*Id.* ¶ 19) (stating that Lopera struck Tashii's face and head approximately twelve times). Next, Lopera "choked Tashii for over a minute" by using a chokehold maneuver. (*Id.*).

---

[2] According to the First Amended Complaint, there was no indication that Tashii was trying to steal anything—Tashii "did not attempt to either open the tailgate of the vehicle nor did he attempt to open the driver's side door." (FAC ¶ 17).

Sergeant Crumrine was Officer Lopera's commanding officer, and he arrived at the scene of the incident within seconds before Lopera administered the chokehold on Tashii. (*Id.* ¶ 22). Officers Tran and Flores also arrived at the scene as Lopera began the chokehold. (*Id.* ¶¶ 22–23). Tran initially told Lopera to let go of Tashii—but Lopera "continued to administer the choke hold for forty-four more seconds" as Sergeant Crumrine, Officer Flores, and Officer Tran allegedly screamed and cursed at Tashii while placing handcuffs on him and holding him down. (*Id.* ¶ 20, 22).

Moreover, according to Plaintiff's allegations, Sergeant Crumrine did not intervene at all; nor did Flores or Tran. (*Id.* ¶ 23). From Lopera's chokehold and beating, Tashii became unconscious and died. (*Id.* ¶ 23–24).

On May 13, 2018, Plaintiff filed her Complaint, (ECF No. 1). Shortly afterward, Plaintiff amended her Complaint, asserting three causes of action based on violations of her due process right to familial association with Tashii: (1) violation of civil and constitutional rights of familial association under 42 U.S.C. § 1983, against Officer Lopera, Officer Tran, Officer Flores, and Sergeant Crumrine; (2) violation of civil and constitutional rights of familial association under 42 U.S.C. § 1983 against LVMPD under a theory of municipal liability; and (3) violation of civil and constitutional rights of familial association under 42 U.S.C. § 1983, against Sergeant Crumrine for supervisor liability. (FAC ¶¶ 56–92).

On September 17, 2018, LVMPD Defendants filed their instant Motion to Dismiss, (ECF No. 12), seeking dismissal of Plaintiff's First Amended Complaint with prejudice. Plaintiff thereafter filed her Motion for Summary Judgment, (ECF No. 69).

## II.    LEGAL STANDARD

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See N. Star Int'l v. Ariz. Corp.*

*Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

A court may also dismiss a complaint pursuant to Federal Rule of Civil Procedure 41(b) for failure to comply with Federal Rule of Civil Procedure 8(a). *Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124, 1129 (9th Cir. 2008). Rule 8(a)(2) requires that a plaintiff's complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Furthermore, the Supreme Court has already rejected any sort of "heightened" pleading requirement for § 1983 municipal liability claims because such a heightened pleading standard cannot be "square[d] . . . with the liberal system of 'notice pleading' set up by the Federal Rules." *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). "Prolix, confusing complaints" should be dismissed because "they impose unfair burdens on litigants and judges." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss becomes a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

**B. Summary Judgment**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is

sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

## III. DISCUSSION

While the Motion to Dismiss, (ECF No. 12), filed by LVMPD Defendants and Officer Lopera was pending before the Court, Plaintiff filed her Motion for Summary Judgment on the ground that no Defendant filed an Answer to the First Amended Complaint, and thus they admitted all facts alleged. (Mot. Summ. J. ("MSJ") 6:11–8:7, ECF No. 69). LVMPD Defendants and Officer Lopera respond that, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(a)(4), their timely Motion to Dismiss tolled the requirement to file an Answer until after the Court resolves it. (Resp. to MSJ 2:23–3:24, ECF No. 70). Considering this procedural posture, the Court's below discussion first addresses whether Defendants' Motion to Dismiss tolled their obligation to file an Answer. Because the Court finds that it did, the Court then addresses the merits of the Motion to Dismiss.

### A. Motion for Summary Judgment

Plaintiff's central argument in her Motion for Summary Judgment is that FRCP 12(a)(4)'s tolling provision does not apply here because, by filing an amendment to her Complaint under FRCP 15, only FRCP 15 governs the deadline to file an Answer. (Reply 3:22–28, ECF No. 74). And FRCP 15 does not have an applicable tolling provision like FRCP 12(a)(4) for motions filed pursuant to FRCP 12(b). (*Id.*). For her argument, Plaintiff largely relies on *Gen. Mills, Inc. v. Kraft Foods Glob., Inc.*, 487 F.3d 1368, 1376 (Fed. Cir.), *decision*

*clarified on reh'g*, 495 F.3d 1378 (Fed. Cir. 2007) and *Coppola v. Proulx*, No. 3:11-CV-00074-LRH, 2012 WL 3068792, at *6 (D. Nev. July 26, 2012), among other cases standing for the same position. (*Id.* 9:19–11:3).

Contrary to Plaintiff's argument, *Gen. Mills, Inc. v. Kraft Foods Glob., Inc.* and *Coppola v. Proulx* do not stand for the broad position that an amended complaint, in any circumstance, prevents a court from applying FRCP 12(a)(4)'s tolling provision. Nor do the other decisions cited in Plaintiff's Motion. Indeed, the Federal Circuit in *Gen. Mills, Inc. v. Kraft Foods Glob., Inc.* later clarified that "[w]e did not and do not hold that the tolling provision of Rule 12(a)(4)(A) never applies to responses to amended pleadings." *Gen. Mills, Inc. v. Kraft Foods Glob., Inc.*, 495 F.3d 1378, 1379 (Fed. Cir. 2007). That is, "when there is 'time remaining for response to the original pleading'—for example, when a plaintiff amends her complaint as a matter of right before serving the defendant or before the defendant answers—the first prong of Rule 15(a) (which refers to a deadline that is tolled by Rule 12(a)(4)(A)) becomes the longer of the two prongs, and the extended deadline of Rule 12(a)(4) controls." *Gen. Mills, Inc. v. Kraft Foods Glob., Inc.*, 495 F.3d 1378, 1379 (Fed. Cir. 2007) (emphasis added); *cf. Coppola*, 2012 WL 3068792, at *6 (concerning circumstances where the plaintiff served a second amended complaint on the defendant, and twenty-seven days later the defendant filed a motion to dismiss, but no answer).

Here, the docket shows that Plaintiff filed her original Complaint, (ECF No. 1), on May 13, 2018. But before she served LVMPD Defendants and Officer Lopera with that Complaint, she filed her First Amended Complaint, (ECF No. 4). Plaintiff then served LVMPD Defendants and Officer Lopera with both the original Complaint and the First Amended Complaint in the same service of process. (*See* Acceptance of Service, ECF No. 79) (showing that Officer Lopera accepted service of "Plaintiff's Summons, Complaint, and First Amended Complaint" on August 3, 2019); (Summons Returned Executed, ECF Nos. 7–11).

That sequence of filings is crucial, because it takes this case out of the rigid application of FRCP 15 discussed in *General Mills, Inc. v. Kraft Foods Global, Inc.* and *Coppola v. Proulx*. Specifically, based on Plaintiff's service of process, the time for LVMPD Defendants and Officer Lopera to respond to the First Amended Complaint was the same as that for the original Complaint. *See Gen. Mills, Inc. v. Kraft Foods Glob., Inc.*, 495 F.3d 1378, 1379 (Fed. Cir. 2007); *see* Fed. R. Civ. Pro. 15(a)(3). Less than one week after service, the parties extended the applicable response deadlines in a stipulation, which the Court granted. (Order Granting Stipulation, ECF No. 6) (providing LVMPD Defendants until September 17, 2018 to "respond" to the First Amended Complaint; and providing Officer Lopera until October 2, 2018 to "respond" to the First Amended Complaint). Though that stipulation referred the First Amended Complaint, it did not state that the extension applied only to the filing of an Answer as required by FRCP 15 and not the applicable deadlines associated with the original Complaint under FRCP 12. Without such limiting language, the Court construes this stipulation as extending the deadlines associated with the First Amended Complaint *and* the original Complaint. As a result, FRCP 15's "time to respond" requirement incorporates "the time remaining to respond to the original pleading" under FRCP 12, and thereby includes the tolling provision of FRCP 12(a)(4). *See Gen. Mills, Inc.*, 495 F.3d at 1379.

LVMPD Defendants and Officer Lopera then timely made their "required response to the original pleading" under FRCP 12(a) and 15(a) by filing their Motion to Dismiss, (ECF No. 12), on September 17, 2018, and Joinder, (ECF No. 13), on September 19, 2018. Consequently, LVMPD Defendants and Officer Lopera will not need to file an Answer until the Court resolves their Motion to Dismiss, which the Court now does in this Order. *See* Fed. R. Civ. Pro. 12(a)(4); Fed. R. Civ. Pro. 15(a); *Gen. Mills, Inc.*, 495 F.3d at 1379.[3]

---

[3] Aside from the intricacies between FRCP 12 and 15, Plaintiff's Motion for Summary Judgment is, in effect, a motion for default and default judgment under FRCP 55. However, even if the Motion to Dismiss did not toll the deadline to file an Answer, LVMPD Defendants and Officer Lopera's motion practice and activity in this

Because LVMPD Defendants and Officer Lopera did not violate their obligations to answer or otherwise plead, the allegations in the First Amended Complaint are not deemed admitted pursuant to FRCP 8. *See* Fed. R. Civ. Pro. 8(b)(6). Plaintiff is incorrect in arguing that she is entitled to summary judgment based on her allegations being admitted by default, (*see* MSJ 6:24–27); and her Motion for Summary Judgment is denied.

### B. Motion to Dismiss

LVMPD Defendants and Officer Lopera contend that the Court should dismiss Plaintiff's claims with prejudice for two reasons: (1) Plaintiff lacks standing to bring her claims; and (2) qualified immunity applies to LVMPD Defendants and Officer Lopera. (MTD 2:6–11, ECF No. 12). The Court addresses each ground in turn.

#### i. *Standing*

At the time of the subject incident, Tashii was forty years old. (FAC ¶ 5). Consequently, LVMPD Defendants and Officer Lopera argue that Plaintiff lacks standing to bring her claims because "she had no legally protected interest in [Tashii's] companionship after Tashii reached the age of majority." (MTD 4:26–5:1). Nevertheless, LVMPD Defendants and Officer Lopera concede that the Ninth Circuit recognizes "the right for a parent to pursue a Fourteenth Amendment familial relationship claim for their adult child." (*Id.* 5:1–5). They argue that the Court should disregard Ninth Circuit precedent in favor of the reasoning from the other jurisdictions which have held that parents do not have standing to bring claims based on the loss of companionship with an adult child. (*Id.* 5:6–8:16).

The Court declines to reject binding precedent from the Ninth Circuit. Indeed, the Ninth Circuit recently re-affirmed its position on this standing issue in *Jones v. Las Vegas Metro.*

---

case demonstrates their clear intent to defend this action, such that judgment under FRCP 55 would be inappropriate. Accordingly, like in *Coppola v. Proulx*, No. 3:11-cv-00074-LRH, 2012 WL 3068792, at *7 (D. Nev. July 26, 2012), Plaintiff's Motion for Summary Judgment lacks merit "in the absence of further dilatory conduct."

*Police Dep't*, 873 F.3d 1123, 1132 (9th Cir. 2017). The Court thus finds Plaintiff has standing to bring her claims even though Tashii reached the age of majority before the subject incident.

Additionally, LVMPD Defendants and Officer Lopera argue that Plaintiff does not have standing to pursue her Fourteenth Amendment familial relationship claim because Defendants conduct was directed at Tashii, rather than at Plaintiff or her familial relationship with him. (MTD 8:19–22). This argument again goes against Ninth Circuit precedent, which holds that "as long as the state official's action which deprived the plaintiffs of their liberty interest was more than merely negligent, plaintiffs can state a section 1983 [substantive due process] claim without further alleging that the official was trying to break up their family." *Smith v. City of Fontana*, 818 F.2d 1411, 1420 n. 12 (9th Cir. 1987), *overruled on other grounds by Hodgers–Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999). Accordingly, Plaintiff can pursue her claims without needing to allege that LVMPD Defendants or Officer Lopera had a specific intent to interfere with her and Tashii's familial relationship. *See Estate of Prasad ex rel. Prasad v. Cty. of Sutter*, 958 F. Supp. 2d 1101, 1127 (E.D. Cal. 2013). To the extent LVMPD Defendants and Officer Lopera argue otherwise, their Motion is denied.

### ii. *Qualified Immunity*

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). Thus, to overcome a claim of immunity, Plaintiff must plead "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). A right is "clearly established" when "'[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he

is doing violates that right.' " *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1130 (9th Cir. 2017) (quoting *al-Kidd*, 563 U.S. at 741).

"Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (citation omitted). While this analysis does not require a case directly on point for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

Here, LVMPD Defendants and Officer Lopera contend that qualified immunity shields them from Plaintiff's claims for two reasons. (MTD 11:25–27). First, they point to the lack of clearly established law surrounding Plaintiff's standing to bring her claims. (*Id.* 12:3–19). Second, they argue that LVMPD Defendants' alleged "failure to intervene" did not constitute a violation of a clearly established right. (*Id.* 12:20–15:8). As explained below, neither contention warrants qualified immunity considering Plaintiff's allegations at this stage.

a) *Plaintiff's Right to Bring Suit*

LVMPD Defendants and Officer Lopera argue that, in light of the circuit split about Plaintiff's standing to bring her claims, they could not have violated a "clearly established" right of Plaintiff's. (*Id.* 12:3–19). Specifically, LVMPD Defendants argue "the pronounced split that exists among the circuit courts of appeal demonstrates that existing precedent has not placed the constitutional question—whether the actions of the LVMPD Defendants, as alleged by Trinita, would violate Trinita's Fourteenth Amendment right to familial relations with her adult son—beyond debate." (*Id.*). The Court, however, finds this argument to not have merit.

At the outset, the Court notes that qualified immunity "focuses on the objective legal reasonableness of an official's acts," *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982), "and not on whether the plaintiff may or may not recover for the alleged illegalities." *Eng v. Cooley*, 552 F.3d 1062, 1068 (9th Cir. 2009) (discussing how the policies underlying qualified immunity

concern whether "an official could be expected to know certain conduct would violate statutory or constitutional rights" rather than on an official's knowledge that the person who suffers an injury does, or does not, have a cause of action.). Regardless, at the time of the events giving rise to Plaintiff's claims, the law in the Ninth Circuit consistently recognized—as it still does—that a parent has standing to bring claims against officials under the Fourteenth Amendment based on that parent's "right to a child's companionship without regard to the child's age." *See Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1169 (9th Cir. 2013) (collecting cases); *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1132 (9th Cir. 2017). Accordingly, considering the Ninth Circuit's consistent stance with this specific issue, mere disagreement by out-of-circuit courts does not entitle LVMPD Defendants or Officer Lopera to qualified immunity here. *See, e.g.*, *Carrillo v. Cty. of Los Angeles*, 798 F.3d 1210, 1221 n.13, 1223 (9th Cir. 2015) ("Only in the absence of binding precedent do we consider other sources of decisional law such as out-of-circuit cases."); *Boyd v. Benton Cty.*, 374 F.3d 773, 781 (9th Cir. 2004) ("If the right is clearly established by decisional authority of the Supreme Court or this Circuit, our inquiry should come to an end.").

### b) *LVMPD Defendants' Failure to Intervene*

Plaintiff argues that LVMPD Defendants' conduct in failing to intervene with Officer Lopera violated clearly established law because they "knew excessive force was being used by Officer Lopera . . . . [and] clearly disregarded procedures in place when they witnessed and allowed such excessive force." (Resp. 9:23–10:14). Moreover, that failure to intervene, according to Plaintiff, gives rise to her claims because their actions "shock the conscience." (*Id.* 10:12–14). LVMPD Defendants, by contrast, contend that they are entitled to qualified immunity because there was no "clearly established" duty to intervene that they violated during the subject incident. (MTD 15:5–8).

"[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (internal quotation marks and citations omitted). An officer who fails to intervene when a fellow officer uses excessive force would be responsible, just as the fellow officer, for violating the Fourth Amendment's requirement that police may use only such force as is objectively reasonable under the circumstances. *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996); *Graham v. Connor*, 490 U.S. 386, 397 (1989). "Determining whether force used in making an arrest is excessive or reasonable 'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *LaLonde v. Cty. of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000) (citing *Graham*, 490 U.S. at 396).

LVMPD Defendants posit that the Court's qualified immunity analysis as to them should begin with the standard that late arriving officers can assume proper, constitutional procedures had been followed by officers already on scene. (MTD 14:1–2). Thus, they should not be imputed with knowledge of Officer Lopera's excessive use of force before they arrived. (*Id.*). In certain circumstances, this general argument is correct. *See White v. Pauly*, 137 S. Ct. 548, 552 (2017).

Nevertheless, Plaintiff's allegations plausibly allege how this general principle does not entitle LVMPD Defendants to qualified immunity at this stage. According to Plaintiff's allegations, LVMPD Defendants would have recognized excessive force used by Officer Lopera upon their arrival because they saw Lopera begin to administer his chokehold on Tashii—while Tashii was already incapacitated and on the ground. (FAC ¶¶ 18, 22). The allegations further state that instead of intervening, LVMPD Defendants held Tashii down and

placed handcuffs on him as Lopera continued to administer his chokehold. (*Id.* ¶ 23); *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1059 (9th Cir. 2003) ("The officers—indeed, any reasonable person—should have known that squeezing the breath from a compliant, prone, and handcuffed individual despite his pleas for air involves a degree of force that is greater than reasonable."). Officer Tran initially told Lopera to let go of Tashii upon his arrival; but the First Amended Complaint alleges that he and the rest of LVMPD Defendants still continued to hold Tashii down as he was incapacitated, screamed and cursed at him, and observed Lopera maintain his chokehold for over a minute while Tashii became unconscious. (*Id.* ¶¶ 20, 22, 24). All these actions occurred under the following backdrop: "Tashii had no weapons"; "Tashii committed no crime" and "there was no indication that Tashii caused any harm to any persons or caused any property damage, or that he presented an immediate threat of death or serious bodily injury to anyone." (*Id.* ¶¶ 15, 60).

The Ninth Circuit has consistently held that an officer's duty to intervene with the use of excessive force by another officer is clearly established. *See, e.g.*, *Cunningham*, 229 F.3d at 1289. It is also clearly established that police officers cannot use unnecessary, lethal force on a suspect who has been restrained and no longer presents an imminent danger to the officers or others. *See, e.g.*, *Drummond*, 343 F.3d at 1059. Here, Plaintiff's allegations plausibly allege that each LVMPD Defendant violated those clearly established standards. This is evident with Sergeant Crumrine, who was Lopera's supervising officer on the scene, based on his alleged failure to provide any orders or instructions to cease the apparent excessive force as he observed Lopera administer the deadly chokehold to a handcuffed, incapacitated Tashii for over a minute. (FAC ¶¶ 20, 22); *see Lolli v. Cty. of Orange*, 351 F.3d 410, 418, 421–22 (9th Cir. 2003). Officer Tran's brief mention to Lopera that he should let go of Tashii creates a concern about whether this constituted intervention. (*Id.* ¶ 22). However, Tran still joined in holding Tashii down and handcuffing him as he laid incapacitated and confined by Lopera's deadly

chokehold. (*Id.*). Moreover, the Amended Complaint does not mention any attempt to intervene by Officer Flores. At this stage, the Court can reasonably infer from the allegations that Flores did not attempt to intervene.

When taking Plaintiff's allegations as true and with all inferences in her favor, the First Amended Complaint plausibly demonstrates that, under clearly established law, LVMPD Defendants conduct could constitute a failure to intervene with Officer Lopera's excessive use of force. *Drummond*, 343 F.3d at 1059, 1062; *Coley v. Lucas Cty., Ohio*, 799 F.3d 530, 541 (6th Cir. 2015); *Barnard v. Las Vegas Metro. Police Dep't*, 310 F. App'x 990, 992–93 (9th Cir. 2009); *Abston v. City of Merced*, 506 F. App'x 650, 652 (9th Cir. 2013).[4] Accordingly, to the extent LVMPD Defendants' current Motion to Dismiss argues for qualified immunity because there was not a clearly established duty to intervene in circumstances like this case, their Motion is denied.[5]

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, (ECF No. 12), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 69), is **DENIED**.

---

[4] Though Plaintiff does not provide a case that deals with qualified immunity under the exact factual circumstances here, that does not mean qualified immunity must attach. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Wall v. Cty. of Orange*, 364 F.3d 1107, 1111 (9th Cir. 2004).

[5] In their Motion to Dismiss, LVMPD Defendants do not address the specific issue of whether the conduct of Officer Lopera and each LVMPD Defendant rose to a level that "shocks the conscience," and whether that conduct would permit Plaintiff's due process claims to proceed without the bar of qualified immunity. (*See* FAC ¶¶ 56–70, 91); (Resp. 9:25–17); *cf. Porter v. Osborn*, 546 F.3d 1131, 1136 (9th Cir. 2008). Instead, as discussed above, LVMPD Defendants focus on the step before this issue: whether, under clearly established law, they even had a duty to intervene under the circumstances here, and whether they violated that duty. (*See* MTD 12:21–15:8) ("Thus, even if construing the facts, as pleaded, in a light most favorable to [Plaintiff], there was no 'clearly established' duty to intervene that was violated by LVMPD Defendants. As a result, LVMPD Defendnts [sic] are entitled to qualified immunity, and this Court should dismiss [Plaintiff's] claims accordingly."); (Reply 5:10–7:24). The Court, therefore, is not presently faced with determining if the alleged conduct of LVMPD Defendants and Officer Lopera could "shock the conscience" under a clearly established standard.

**IT IS FURTHER ORDERED** that Officer Lopera's Motion for Leave to File Surreply, (ECF No. 75), is **GRANTED**.

**DATED** this __29__ day of September, 2019.

_____
Gloria M. Navarro, District Judge
United States District Court