# EXHIBIT 6
# Excerpts from Trevor Alsup Deposition, Vol. II, 4/10/19

# Condensed Transcript

# Trever Alsup
Volume I

**Date:** April 10, 2019

Trinita Farmer v. Las Vegas Metropolitan Police Department, et al.
Case No. 2:18-cv-00860-GMN-VCF

Oasis Reporting Services, LLC
Phone: 702-476-4500
Fax: 888-529-5512
E-mail: info@oasisreporting.com
Internet: www.oasisreporting.com

Page 41

1  What is your understanding of how Tashii Farmer
2  came into contact with Officer Ken Lopera and Officer
3  Ashley Lif?
4     A   That he had walked up to their location inside
5  the Venetian near the Coffee Bean and said that somebody
6  was chasing him or something to that effect, and that's
7  how everything started.
8     Q   Okay. Do you remember any of the impressions
9  that either Officer Lif -- and Lif is L-i-f even though I
10 just spelled it with a "t" when I pronounced it, L-i-f --
11 or Officer Lopera perceived when they saw Tashii Farmer?
12    A   I was not privy to that information due to the
13 fact that Officer Lopera did not give us a statement.
14    Q   But Officer Lopera made statements on body-worn
15 cam that you reduced to writing in your Arrest Report;
16 correct?
17    A   Correct.
18    Q   You don't recall any of those --
19    A   Just that he was sweating and -- I'd have to
20 look through to see exactly what it was that he said,
21 but --
22    Q   That's fine. We'll get to that in a minute. I
23 just wondered if, sitting here today, you had any memory
24 of those events.
25        You're familiar with the standards obviously

Page 42

1  for reasonable suspicion and probable cause; correct?
2     A   Yes, sir.
3     Q   What is reasonable suspicion in your verbiage?
4     A   Reasonable suspicion is that you believe a
5  person is committing, about to commit, or has committed a
6  crime but it doesn't reach the level of probable cause in
7  which you can make an arrest.
8     Q   But under reasonable suspicion, can you detain
9  someone?
10    A   Yes, sir.
11    Q   For how long?
12    A   Sixty minutes.
13    Q   Is being under the influence of a controlled
14 substance a crime?
15    A   Yes.
16    Q   And so could you have reasonable suspicion to
17 stop and detain that person?
18    A   Yes.
19        MR. LAGOMARSINO: Objection; form.
20 BY MR. MC NUTT:
21    Q   So someone that you believed was under the
22 influence of a controlled substance, you would have legal
23 reasonable suspicion to stop and interview that person;
24 correct?
25    A   Yes.

Page 43

1     Q   And if it turned out to be the case that that
2  person was in fact under the influence of a controlled
3  substance, arresting that person would be in furtherance
4  of a legitimate law-enforcement purpose; correct?
5     A   Yes.
6     Q   Is it reasonable for an officer assigned to the
7  Strip to pursue somebody that flees into the back of the
8  house of a casino? Do you know what I mean by "the back
9  of the house"?
10    A   Yes, sir.
11    Q   Into an employee area only. Is it reasonable
12 for that officer to pursue that person?
13        MR. LAGOMARSINO: Are you talking in this case or
14 just in general?
15        MR. MC NUTT: In general.
16        THE WITNESS: Yes.
17 BY MR. MC NUTT:
18    Q   Why is it reasonable?
19    A   Obviously if it's a marked area for employees
20 only, it's not someplace that the general public has
21 access to. However -- that would be my answer.
22    Q   So tell me what the "however" is.
23    A   In this case specifically, the doors that
24 Farmer went through were marked with an illuminated exit
25 sign.

Page 44

1     Q   Is it your testimony that Tashii Farmer
2  observed the exit sign and believed that was where he
3  should run?
4     A   No, sir.
5     Q   Okay.
6     A   I'm just -- it's just my testimony that it was
7  marked with an illuminated exit sign.
8     Q   Okay. So if there's an exit sign, do you
9  believe that that's an indication that people should go
10 there in anything other than an emergency?
11    A   I guess that would depend on if it said it was
12 an emergency exit or just marked as an exit. If it's
13 just marked as an exit, to me that would be reasonable
14 that any person could go out those doors to exit an
15 establishment.
16    Q   Do you have any evidence that you've seen on
17 the body-worn camera or anything else that Tashii Farmer
18 was reading exit signs as he --
19    A   No, sir.
20    Q   -- fled down that hallway?
21    A   No, sir.
22    Q   And isn't it true that he fled and stumbled
23 over and through yellow cones that were chaining -- you
24 know, roping off the area?
25    A   Yes, sir.

Page 181

CERTIFICATE OF DEPONENT

PAGE   LINE   CHANGE   REASON
_____
_____
_____
_____
_____
_____
_____
_____
_____

\* \* \* \* \*

I, TREVER ALSUP, deponent herein, do hereby certify and declare under penalty of perjury the within and foregoing transcription to be my deposition in said action; that I have read, corrected and do hereby affix my signature to said deposition.

_____
TREVER ALSUP, Deponent

---

Page 182

REPORTER'S CERTIFICATE

I, Ellen A. Goldstein, a duly certified court reporter in and for the County of Clark, State of Nevada, do hereby certify:

That I reported the taking of the deposition of TREVER ALSUP at the time and place aforesaid;

That prior to being examined, the witness was by me duly sworn to testify to the truth, the whole truth and nothing but the truth;

That I thereafter transcribed my shorthand notes into typewriting and that the typed transcript of said deposition is a complete, true and accurate transcription of my shorthand notes taken down at the proceedings.

I further certify that I am not a relative or employee of an attorney or counsel of any of the parties, nor a relative or employee of any attorney or counsel involved in said action, nor a person financially interested in the action.

IN WITNESS THEREOF, I have hereunto set my hand in the County of Clark, State of Nevada, this 22nd day of April 2019.

_____
Ellen A. Goldstein, CCR No. 829